Rockingham,
No. 5724.

ENO BRICK CORPORATION

*v.*

BARBER-GREENE CO.

Argued May 7, 1968.
Decided August 23, 1968.

*Sheehan, Phinney, Bass & Green* and *E. Paul Kelly* ( *Mr. Kelly* orally ), for the plaintiff.

*Orr & Reno* and *Charles F. Leahy* and *Ronald L. Snow* ( *Mr. Leahy* and *Mr. Snow* orally ), for the defendant.

GRIMES, J. Action against the manufacturer of a mixing device to recover for negligent misrepresentation with respect to

the capacity of the device to meet the needs of the plaintiff, a manufacturer of water-struck brick. Trial by jury resulting in a verdict of $15,200 in favor of the plaintiff. The exceptions of the defendant were transferred by *Grant,* J.

The plaintiff, prior to March of 1961, had been manufacturing by hand water-struck brick which has a distinctive appearance for which there is a special demand. The hand method used clay that was scraped from the bank, sun dried, rolled, harrowed and crushed, and then mixed with water to form the mud which was molded in forms. This method, said to be essentially the same as that used by the ancient Egyptians, limited production to about six months of the year. Desiring to increase its production, the plaintiff decided to mechanize its operation and move it under cover. It intended to use a power shovel at the bank instead of scraping and to use a pugmill to mix the clay with water.

It was findable that the plaintiff had never used a pugmill and its officers had no knowledge of them except that they were used in other brickyards in the area which they had visited. Plaintiff contacted the defendant directly regarding a conveyor system and was advised that a representative of Mingolla Machinery Company of Concord would contact them. Mr. Nelson of that firm called on the plaintiff and in the course of discussion of the conveyor system, the need for a pugmill was disclosed. Nelson said that defendant made a pugmill, that he was not familiar with it, but that he would find out about it. As a result, two people representing defendant visited plaintiff's plant and one of them went to another brickyard with Nelson to inspect a pugmill. Paul Eno testified that the mill would not have been ordered if plaintiff had not received assurances from the defendant that it would do the job or be replaced with a standard clay pugmill. Mr. Nelson testified that he inquired of the defendant whether the proposed mill would do the job required by the plaintiff and was told to wait and discuss it when he came to the factory to take a training course. He said that while at the factory he discussed the problem with the defendant's engineers and was told the 840 pugmill would mix the material properly to meet the needs of the plaintiff and that he relayed this information to Eno.

The pugmill was delivered at a price of $7,750 and installed.

It did not work because the material was either expelled before the water had mixed sufficiently with the clay or if the machine was slowed down to obtain a proper mix, production was insufficient. After some experimentation and many conferences, defendant offered to double the length of the pugmill at a cost to the plaintiff of $2,200 which was rejected by the plaintiff which decided to replace the mill with a used Chalmers mill from another brickyard using the motor and clutch drive from the Barber-Greene mill.

There was evidence that contrary to Paul Eno's testimony, no one from the defendant ever made any representations directly to the plaintiff, and the defendant contends that the Trial Court erred in permitting the jury to base liability upon the alternative finding that statements made to Nelson as to the ability of the mill to meet the requirements of the plaintiff were relayed to Eno.

Defendant contends that the statements cannot be the basis of liability because they were expressions of opinion rather than fact and because they were not made directly to the plaintiff but to a third person who was not an agent.

We need not decide whether the statements were of fact or opinion because under the circumstances of this case either may form the basis of an action for damages if made negligently. *Maxwell Ice Co.* v. *Company,* 80 N. H. 236; Prosser, Torts (3d *ed.*) 743. Here, as in *Maxwell,* the statements were made by experts on a matter requiring peculiar skill or knowledge to one not having equal knowledge, for the purpose of inducing the plaintiff to enter into a transaction in which the defendant had a financial interest. Under such circumstances, a statement of opinion may be the basis of an action.

*Garapedian Inc.* v. *Anderson,* 92 N. H. 390, is distinguishable and is not authority to the contrary.

In the case before us, it was findable that defendant's engineer knew that neither Nelson nor the plaintiff had the expertise to determine if the 840 pugmill would do the job, that Nelson was inquiring so he could relay the information to Eno, that Nelson and Eno reasonably believed that the defendant did have the knowledge to determine accurately whether it would do the job, and the defendant had a financial interest in the transaction. Under these circumstances, we hold that it could be found that there was a duty that had been breached. *Maxwell*

*Ice Co.* v. *Company, supra;* Prosser, Torts ( 3d *ed.* ) *pp.* 736-743; Harper and James, The Law of Torts, *s.* 7.6 *p.* 550; 37 Am. Jur. 2d Fraud *s.* 265; 37 C. J. S. Fraud *s.* 10.

Under the circumstances of this case, the fact that the statement was made to Nelson and not directly to Eno does not insulate the defendant from liability. We reject the contention of the defendant that liability in such a case can be found only if the carrier of the information is an agent of the defendant and hold that where, as here, the one making the representation has a financial interest in the transaction and knows that the third person is seeking the information for the purpose of communicating it to a specific individual for the purpose of inducing him to act, the same duty of reasonable care exists whether the third person is an agent or not. Harper and James, Torts *s.* 7.6 *p.* 545-551. Prosser, Torts, *supra,* 721-724. This is not the case of mere reasonable anticipation that the statement will be communicated to "unknown persons " or "unspecified strangers." The defendant here knew precisely to whom the information was to be communicated to induce the purchase of its product.

There was evidence that defendant was aware of plaintiff's concern as to whether the mill would produce the proper sub-homogeneous mix and that water was to be added but was unaware of the need for the water to be worked thoroughly through the lumps. While it knew that the time the mill retained the mix was a factor, it made no inquiry or other investigation to determine how much retention time was required before representing that the machine would do the job. The jury was entitled to find on this evidence that the defendant was negligent in making the statement.

While the plaintiff was expert in the hand making of water-struck brick, it had no experience with pugmills. The evidence in this case was sufficient to sustain the plaintiff's burden of proof that it exercised due care in relying upon the representation. The defendant's motions relating to the sufficiency of the evidence to support a verdict in favor of the plaintiff were properly denied by the Trial Court.

The defendant contends that the Trial Judge erred when he charged the jury that one of the factors to consider in a question of damages was the "cost of mill, less its fair value, present fair market value." The instructions continued, "There has

been some evidence before you as to what was some salvage from it. You can consider that." Defendant contends that the test should have been "the difference between the price paid for the machine and the actual monetary value . . . in 1961 when delivered."

The rule contended for by the defendant is referred to as the "out-of-pocket rule" as distinguished from the "benefit of the bargain rule," which allows recovery for the difference between the actual value of the thing and what its value would have been if it had been as represented. *Noyes* v. *Blodgett,* 58 N. H. 502; *Lampesis* v. *Comolli,* 101 N. H. 279. While it has been said that this state adopts the majority or "benefit of the bargain rule" (*Lampesis* v. *Comolli, supra,* 284) we do not think it applicable in this case, because the plaintiff sought to recover out-of-pocket losses, and the defendant relied wholly upon the "out-of-pocket rule" in asserting that there were no representations concerning the adequacy of the machine and that the plaintiff suffered no loss because the machine upon delivery had a market value as an asphalt mixing machine which was equal to the price paid. See Annot. 13 A. L. R. 3d 875; Prosser, Torts (3d *ed.*) 751.

We hold that the rule to be applied in this case is the difference between the price paid and the fair market value of the mill after the plaintiff discovered, or reasonably should have discovered, that it would not do the job as represented, and after making every reasonable effort, and giving the defendant reasonable opportunity, to make it do the job. See *Trask* v. *Hamburger,* 70 N. H. 453; 5 Corbin on Contracts, *s.* 1101, *p.* 545. We hold also that the burden was upon the defendant of showing that losses could have been avoided by reasonable effort and expense on the part of the plaintiff. 5 Corbin, *supra, s.* 1039, *p.* 248, *et seq.*

The defendant maintains that it should not properly be charged with the cost of the machine ($7,750), less the salvage value of the motor and transmission drive ($1,271) which were removed by the plaintiff for use in the Chalmers mill which it eventually purchased. There was no evidence that the remainder of the machine as it stood in late August 1962 had any market value with which the plaintiff should be charged. It appeared that before its use was abandoned by the plaintiff it had been necessary for the defendant to furnish new bearings and a shaft

in a replacement of the original equipment which failed to stand up under the use made by the plaintiff.

When the Trial Court instructed the jury that it should consider as a factor in determining the damages "the cost of mill less its fair value, present fair market value," after also considering the salvage value of the motor and drive, we think that the jury must reasonably have understood the Court to mean the value in August 1962 after the motor was removed rather than, as the defendant contends, the value of the mill in whatever its condition may have been at the time of trial in November 1966. Accordingly, the exception to the Court's instruction is overruled.

The defendant contends that the Trial Court also erred in not instructing the jury that in comparing the production of the Barber-Greene pugmill in 1962 with the production of the replacement mill during a comparable period in 1963, they should not consider the months of March for these years because production was not started until March 21, 1962 and no records were kept until the twenty-third whereas the replacement mill operated for the full month of March 1963.

This comparison was essential to show loss of profits as an incidental element of damages. The Trial Court left it to the jury to determine what comparable periods to use, in accordance with the testimony and exhibits before them. In this we see no error.

*Exceptions overruled; judgment on the verdict.*

All concurred.