Rockingham
No. 7274

TOBER'S INCORPORATED

v.

PORTSMOUTH HOUSING AUTHORITY

November 30, 1976

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James S. Yakovakis (Mr. Yakovakis* orally) for the plaintiff.

*Gerald F. Giles* and *Francis J. Riordan (Mr. Giles* orally) for the defendant.

PER CURIAM.  The plaintiff seeks to recover for alleged loss of business profits for the period August 1970 to August 1972, allegedly caused by negligent misrepresentations of the Portsmouth Housing Authority. Trial by jury resulted in a verdict for the plaintiff in the sum of $71,000. The defendant excepted to denial of its motions for nonsuit, directed verdict, and to set aside the verdict and to certain instructions to the jury and the denial of certain requests for instructions. The questions of law presented by defendant's exceptions were transferred by *Cann,* J.

The defendant questions the sufficiency of the complaint to state a cause of action, and the sufficiency of the evidence to support the verdict. From the evidence it appears that in 1963 the

defendant authority, a public corporation organized under the provisions of RSA ch. 203, applied to the Department of Housing and Urban Development for funds to be used in the planning and preparation of the so-called Vaughn Street urban renewal project. *See* 42 U.S.C. §§ 1453, 3532. The project called for extensive redevelopment of approximately thirty acres in and adjacent to the Portsmouth business district. The plaintiff corporation occupied a building situated on Congress Street on one of the parcels scheduled for redevelopment. At all pertinent times the stock of Tober's, Inc., was held by Irving Tober, David Tober, Edward Tober, and Lee Tober Furman as guardian for Robert and Stephen Tober, minor children. Although in slightly different proportions, the same four individuals also owned the land and building in which the business of Tober's, Inc., was housed.

On December 1, 1969, the authority entered into a site preparation contract with the Seaward Construction Company which called for the installation of streets, sidewalks, and utilities including a street which would intersect Congress Street at a point adjoining the Tober building. It was then fully anticipated that site preparation would require demolition of various structures, including the building owned by the Tobers and occupied by Tober's, Inc. From the outset, representatives of the authority met with the Tobers to discuss relocation, both temporary and permanent. The evidence on this point is conflicting, and inconclusive, but it is apparent that the parties were never able to reach an agreement satisfactory to the Tobers for relocation within the redevelopment project.

On February 5, 1970, the authority brought a petition against Irving Tober, David Tober, Edward Tober and Lee Tober Furman to condemn the fee. The Tobers have not disputed the necessity or desirability of the urban renewal project, nor do they contest the right of the authority to proceed with condemnation. *See Velishka v. Nashua,* 99 N.H. 161, 106 A.2d 571, 44 A.L.R.2d 1406 (1954); *Club Joilet, Inc. v. Manchester,* 110 N.H. 172, 262 A.2d 844 (1970). Through counsel, they waived hearing on the condemnation petition and agreed to a decree vesting title in the authority with right of immediate entry and possession. On May 20, 1970, pursuant to this agreement, the authority deposited $70,000 in court and was granted the right to enter upon the property and to demolish the building. Thereupon Tober's, Inc., became a tenant at will of the authority.

On May 21, 1970, the authority issued the standard 90-day notice to vacate required by federal law specifying that the property was "scheduled for demolition." At the same time, the authority advised the Tobers of its policy to grant liberal extensions, from month to month in 30-day increments, until such time as demolition should be imminent, but that it could not guarantee more than one 30-day extension at any one time.

Having just previously placed orders for future delivery of merchandise, the plaintiff decided to cancel its orders and to liquidate its business. On July 14, 1970, it notified the authority of its intention to quit the premises on or before July 31, 1970. It ceased business during the latter part of July 1970; and finally vacated the premises on August 31, 1970. The plaintiff did not reestablish its business until August 1972 when it did so at a point some five miles from its original location.

The case was tried upon a declaration alleging that "the defendant had an obligation and duty to allow the plaintiff to continue to use said premises . . . until such time as it was necessary for the defendant to put said property to a use other than as a retail store," and that the defendant "did negligently misrepresent to the plaintiff that said premises were to be demolished . . . ." and that "the plaintiff relying upon the statements of the defendant did sell all its merchandise and fixtures . . . ." and "through the defendant's negligent misrepresentation as aforesaid . . . did suffer" damages.

The record contains no evidence that the defendant was under an obligation or duty to allow the plaintiff to remain on the premises until it became necessary to put the building to a different use. The representations of an August 1966 letter from the assistant director of the authority, addressed to "all occupants", and stating that "occupants will not be required to move until a suitable place is available" and that "property owners may remain as tenants even after their property is acquired" must be construed in light of intervening circumstances by the time the notice to vacate was given to the plaintiff on May 21, 1970. In December 1969 demolition of the Tober building was contemplated by the project site preparation contract. Admittedly no guarantee was given in May 1970 that the plaintiff would not be required to vacate after 120 days from the date of notice. It was later determined that the building could be permitted to stand, but it was eventually demolished.

The trial proceeded, not on the theory of a duty to permit the plaintiff to remain in possession until the last possible moment, but on the basis of reliance upon alleged misrepresentations by the authority. This required evidence of the defendant's negligent failure to exercise care or competence in communicating information, and of the plaintiff's justifiable reliance upon such information to its damage. Restatement (Second) of Torts § 552 (Tent. Draft No. 12, 1966); Restatement of Torts § 552 (1938); *Garapedian, Inc. v. Anderson,* 92 N.H. 390, 31 A.2d 371 (1943). *See also Eno Brick Co. v. Barber-Greene Co.,* 109 N.H. 156, 245 A.2d 545 (1968); W. Prosser, Law of Torts § 107, at 704-07, § 108 (4th ed., 1971).

The record is replete with evidence that the authority undertook to find other suitable locations for the plaintiff, both temporary and permanent, but that none were satisfactory to the plaintiff. The plaintiff's application in March 1970 to redevelop a single small parcel (C 9-7) while it was unwilling to develop an adjoining parcel (C 9-6) at the same time, was not accepted for reasons dictated by the overall purposes of the project.

However, following a meeting of the authority in May 1970, the plaintiff was offered an opportunity to acquire and preserve the building where its business was located (parcel C 9-5), provided it would refurbish and alter it to the extent necessary to provide clearance for the new street and its utilities and to bring the building into architectural harmony with the surrounding development. This was a proposal requiring modification of the project plan, which would have conferred a special privilege upon the plaintiff. The plaintiff however took no action to avail itself of the offer. As a whole the record tends to show that the plaintiff was accorded more than routine consideration by the authority.

An essential element of the cause of action asserted by the plaintiff was justifiable reliance upon representations negligently made by the defendant. Restatement (Second) of Torts § 552 *supra.* The record contains no evidence of reliance upon the defendant's representations that extensions of time could later be granted after the expiration of the first 120 days. On the contrary the record establishes that the plaintiff decided not to rely upon prospective extensions of time but rather cancelled orders for merchandise which had been given shortly before May 21, 1970, advertised on July 13, 1970, a going-out-of-business sale, and on July 14, 1970, notified the authority of its purpose to vacate the

premises by July 30, 1970. Any reliance upon the long-standing representation that the building was to be demolished was belied by the evidence of the proposal that the plaintiff retain and refurbish it.

Much of the trial was devoted to examination of the relative efforts made by all parties to relocate the plaintiff in a suitable location. No reason appears to question the good faith of either party in this regard. As to redevelopment by the plaintiff, on the one hand the Tobers were unwilling to invest personal funds in refurbishing their building in order to integrate it with the redevelopment plan. On the other hand, the authority was unwilling to permit the Tobers to redevelop a neighboring parcel of land, unless as a unit with contiguous land. This the Tobers were either unable or unwilling to do. While the authority had a duty to assist in relocating the plaintiff, *815 Mission Corp. v. Superior Court*, 22 Cal. App. 3d 604, 99 Cal. Rptr. 538 (1971), this duty cannot justify the recovery which the plaintiff seeks. Although the authority had a general duty arising out of the relationship of the parties to deal in good faith, this did not translate into a duty to allow the plaintiff to remain in possession until demolition became imminent.

The record indicates that the plaintiff could in fact have remained in possession on a month-to-month basis. The authority was under no greater obligation to it. *815 Mission Corp. v. Superior Court supra; see Muse v. Merrimack Valley Nat'l Bank*, 114 N.H. 700, 327 A.2d 719 (1974). The order to vacate, which prompted the Tobers to leave, was reasonable in all respects since no duty to allow Tober's, Inc., to remain in possession until eviction can be inferred from either the statutory mandates of the housing authority, or the particular relationship of the parties. Nor was there any nexus between any loss the plaintiff may have suffered as a result of its decision to vacate, and any conduct of the authority which can be fairly termed "negligent," or a misrepresentation.

All that was required was that the redevelopment plan be reasonably certain, and that the authority act in good faith in issuing the notice to quit. *See Wilson v. United States*, 350 F.2d 901 (10th Cir. 1965); *Beistline v. San Diego*, 256 F.2d 421 (9th Cir., *cert. denied*, 358 U.S. 865 (1958)). The plaintiff was not entitled to compensation in tort for the interruption of its business incident to a valid condemnation. *See Amoskeag-Lawrence Mills v. State*, 101 N.H. 392, 399, 144 A.2d 221, 226 (1958).

We are of the opinion that the trial court erred in failing to direct a verdict for the defendant for lack of evidence of a valid cause of action. The order is

*Judgment for the defendant.*

Bois, J., did not sit.