[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION NATURE OF THE ACTION
This case comes before the court pursuant to an action brought by the plaintiffs, Anita and Salvatore Cecere, in what is now a four count claim seeking damages for an alleged default in the payment of a note and an oral contract of employment. CT Page 2849
Counts one and two of the amended complaint allege a default in the payment of a promissory note in the sum of $19,000. Count two alleges those facts and in addition seeks damages for fraud for failure of the defendant Hi-Tech Forming Systems, Inc. to take title to a concrete pumper in the name of the plaintiff, Anita Cecere.
Count three seeks damages for failure to hire the plaintiff, Salvatore Cecere, in accordance with an oral contract. Count four alleges a CUTPA violation by the defendants in the alleged breaches, of counts one, two and three.
FACTUAL BACKGROUND
The plaintiff, Salvatore Cecere, and the defendant, Reginal Washington, had been friends and business associates over a period of many years. Cecere had been ill and unable to work in 1986 and discussed with Washington a possible association in the Hi-Tech Forming Systems, Inc. (Hi-Tech) of which Washington was a vice-president. Hi-Tech needed $39,000 to purchase a concrete form truck. The plaintiffs agreed to loan Hi-Tech the money. Washington told Salvatore Cecere that he could come to Hi-Tech's place of business in Plainfield ostensibly for Cecere to work there. No agreement as to salary or length of employment was made.
On or about March 1, 1987 the plaintiffs loaned Hi-Tech $39,000. The truck was purchased. Salvatore Cecere brought it to Connecticut from Canada and registered it. Anita Cecere was listed as the first lien holder.
The defendants have repaid the $39,000 loan.
It is at this point that the factual versions of the parties differ.
CLAIMS AND ISSUES
It is the plaintiffs' claim that the defendants signed two notes on or about March 1, 1987 (Exs. A and B) for $20,000 and $19,000 respectively. They further claim that on March 27, 1987, Washington signed an additional note for $19,000 (Ex. E) pursuant to another loan of $17,000 which was for the purchase of a concrete pumper. They claim that these loans were made solely for the purpose of Salvatore's obtaining employment with Hi-Tech.
Hi-Tech and Washington claim that there was only one loan for $39,000., that the second note signed (Ex. E) was on March 27, 1987, and Ex. B was a substitute for that note. They cite lack of proof of consideration for the alleged second loan of $19,000 which the plaintiffs claim was a cash payment. CT Page 2850
Defendants further claim that although some consideration was given to hiring Salvatore Cecere, no agreement was ever formalized and, in fact, Salvatore's health prevented such performance.
This court is therefore presented with two primary issues: 1. Was there, in fact, an additional loan of $19,000. made to the defendants? and 2. Did the parties make an oral contract to employ Salvatore Cecere?
LAW
Inasmuch as three promissory notes were admittedly signed, the plaintiffs must prevail unless the defendants can show that one note was, in fact, a substitute for the other. The burden of proof of this is on the defendants. General Statutes 42a-3-307(2), Connecticut Bank and Trust Company v. Dadi, et al, 182 Conn. 530,531 (1980).
In order to prevail on their claim of breach of an employment contract, the plaintiffs must show by a fair preponderance of the evidence that the agreement to employ Salvatore Cecere was definite and certain as to its terms and requirements. Augeri v. C. F. Wording Co., 173 Conn. 426, 430-431 (1977). The contract must contain essential terms such as those of duration of the contract, conditions of the plaintiff's employment (such as salary, benefits, etc.). D'Alisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 214-215 (1987).
In summary, this court must ascertain if, indeed, there were one or two loans, and whether or not the plaintiff have proven that an oral contract of employment was agreed upon by the parties.
CONCLUSION
From the more probative and credible evidence adduced at trial, the following facts are found.
The plaintiffs, in 1986 and 1987, were having difficult both economically and physically. Salvatore Cecere had lost his business and had also been ill and unable to work. He wished to become associated with Hi-Tech and agreed to loan the company $39,000. He hoped and expected that the making of this loan would enable him to obtain employment with the company.
In 1986, the plaintiffs established a $60,000 line of credit through a home equity loan with the Connecticut Bank and Trust Company. By the end of January, 1987 they had borrowed $4,516. In February, because of the impending $39,000 loan to the defendants, their loan balance increased to $43,687. As of March 31st, the CT Page 2851 balance continued to increase to $52,409, and by the end of June reached $57,027. These borrowings were made by the plaintiffs despite their claim that Anita Cecere had approximately $20,000 in cash that she kept in her home since she received it in 1984 from an accident case settlement. Those borrowings were made despite Anita Cecere's claim that the equity loan was established because her husband "was looking to get back into business, and we wanted an instant line of credit" (CTR #2, P. 25). It was this same $20,000 that the plaintiffs claim provided the funds for the additional $19,000 loan made to the defendants on March 27, 1987.
The defendants claim, and the court so finds, that when the $39,000 truck loan was made, the plaintiff Salvatore Cecere presented to the defendant Washington a form note for $20,000 (Ex. A) which was due in one year and provided for interest. Inasmuch as he did not have a second form note and had made the loan in checks for $20,000 and $19,000, he said he would provide the second note at a later date when he was able to obtain a second form note.
On or about March 27th, still not having obtains the form note, Anita Cecere typed a note for $19,000 (Ex. E). The note did not provide for interest but ran from March 1 to June 1, a period of ninety days. The defendant Washington signed this note on March 27, 1987.
Some time subsequent to this, the plaintiffs obtained the form note, and had it executed by Washington (Ex. B). This note was dated March 1, 1987, was also due on June 1, 1987, but did provide for interest. Salvatore Cecere told the defendant Washington that the second form note was a substitute for the typed note.
The court has reached this conclusion for the following reasons: First, the plaintiffs would not have borrowed money before and after the $39,000 loan if they, in fact, had $20,000 in cash at home; second, the second and third notes were for exactly the same amount, and ran from exactly the same dates (March 1 — June 1, 1987). That the first bore interest and the other did not is merely indicative that the note typed by Anita Cecere inadvertently omitted this provision. The second note corrected this omission third, the court cannot accept the premise that Washington would sign a note on March 27, for money received then, ostensibly for 90 days, when the period ran from March 1. Also, why would the plaintiff lend Hi-Tech money interest free when they were paying interest to the bank? These claims by the plaintiffs defy logic; fourth, the plaintiffs claim that the third note was to pay for a concrete pumper. The exhibit submitted by the defendants (Ex. 1) clearly shows that the pumper was purchased on July 14, 1987 not in March and that the deposit was for $20,000 CT Page 2852 out of a total purchase price of $54,898; lastly, the record is clear that the plaintiff Salvatore Cecere carefully orchestrated the security for the first loan. He registered the vehicle being certain to have the title subject to a first lien to Anita Cecere. In contrast to this, although the plaintiffs claim that title to the pumper was supposed to be in Anita Cecere's name, they did nothing to insure that that in fact was accomplished, and in fact it was not. This court cannot accept the plaintiffs' claim as to this second loan without the plaintiffs' protecting their investment as they had done when they made the $39,000 loan. This was not in character with them and was completely contrary to what they claimed was the defendants' agreement.
The court therefore disbelieves the plaintiffs and concludes that there was only one loan for $39,000., which loan was repaid. The court, therefore, finds for the defendants on the first and second counts.
As to the plaintiff Salvatore Cecere's claim of breach of an oral contract of employment, there has been no evidence produced of such contract. Although the company's officer, Mr. Rose, apparently discussed a job with Cecere, it apparently depended on the company's work and no definite terms of any kind were established. Whether a more definite contract would have been established later is purely conjectural. Cecere's physical health became a concern to Hi-Tech's principals when he became ill on their premises and a doctor's certificate was requested, but never received. Clearly, the plaintiffs have not met their burden of establishing the rudimentary requirements of a valid employment contract. Augeri v. C. F. Wooding Co., supra. Further, the court disbelieves the plaintiffs' claim of such contractual agreement.
Therefore, the court must find for the defendants on the third and fourth counts of the amended complaint.
Judgment may enter for the defendants on all four counts.
FREED, J.