[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE #103
The issues before the court in the defendant's Motion to Strike are:
1. Has the plaintiff alleged facts sufficient to pierce the corporate veil and hold the defendant Steiner personally liable? 2. Has the plaintiff alleged facts sufficient to state a claim for promissory estoppel in count one? 3. Has the plaintiff alleged facts sufficient to state a claim for negligent misrepresentation in count two? 4. Has the plaintiff alleged facts sufficient to state a claim for intentional misrepresentation in count three? 5. Has the plaintiff alleged facts sufficient to state a claim under CUTPA in count four? 6. Has the plaintiff alleged facts sufficient to state a claim for breach of an obligation to pay severance compensation in count five? 7. Has the plaintiff alleged facts sufficient to state a claim for intentional infliction of emotional distress in count six? 8. Does the plaintiff state a claim for double damages and attorney's fees pursuant to Conn. Gen. Stat. 31-72 to support the third prayer for relief?
On January 9, 1990, the plaintiff Charles A. Regulbuto filed a seven count complaint against the defendants General Health Management, Inc. (GHM) and Mark S. Steiner Steiner). The plaintiff alleges the following facts in the first count: (1) the plaintiff is a consultant specializing in the health care industry; (2) in 1982 he "became affiliated as a consultant with the defendant corporation in an executive capacity with executive benefits and also became an officer and director of several of the defendant corporation's subsidiaries"; (3) the "individual defendant is the majority and/or sole stockholder of the defendant corporation . . ."; (4) "the plaintiff has had various business opportunities which he has declined due to promises and assurances from the defendants of equity participation in the defendant corporation"; and (5) the plaintiff "relied on said representations, which were made for the purpose of inducing the plaintiff to remain affiliated with the defendants . . . all to his loss and damage."
The second count alleges that the "representations were made negligently and carelessly by the defendants." The third count alleges that the "representations were false and known to CT Page 832 be false by the defendants and made with the intent to deceive the plaintiff. . . ." The fourth count alleges that the defendants' actions constituted an unfair trade practice under Conn. Gen. Stat. 42-110a et seq. (CUTPA). The fifth count alleges that at the time of the plaintiff's termination "the plaintiff was to receive severance compensation" and the "defendants have breached their obligation to the plaintiff by failing to pay the agreed upon severance compensation." The sixth count alleges that the "defendants have intentionally breached the severance agreement with the plaintiff and have done so recklessly, without care, concern or regard for the plaintiff . . . and have caused him mental distress and anguish. . . ." The seventh count alleges that the "plaintiff was employed on an annual consulting fee basis and the plaintiff is due and owing the balance of his annual consulting fee for the period of 1989" and "the plaintiff is owed from the defendant corporation accrued vacation time."
On February 20, 1990, the defendants filed a motion to strike all counts of the complaint as to the defendant Steiner, and counts one through six and the third prayer for relief as to both defendants, for failure to state a claim upon which relief may be granted.
On April 11, 1990, the plaintiff filed a request to amend the complaint pursuant to Conn. Practice Bk. 176 and an amended complaint which adds counts eight and nine. On April 23, 1990, the defendants filed an objection to the request to amend. The objection has not yet been ruled on by this court.
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170 (1988). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Id. In addition, the court "must construe the facts in the complaint most favorably to the plaintiff." Id. If the "facts provable under its allegations would support . . . a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). However, "mere conclusions of law . . . in the absence of sufficient alleged facts to support them, are subject to a motion to strike." Id.
Counts One Through Seven As to Defendant Steiner
The defendants argue that count one through seven as to the defendant Steiner should be stricken because the plaintiff has "failed to allege facts sufficient to pierce the corporate veil and hold Mr. Steiner personally responsible for GHM's alleged conduct." (Defendants' motion to strike at p. 1). CT Page 833
"Generally, a corporation is a distinct legal entity and the stockholders are not personally liable for the acts and obligations of the corporation." Saphir v. Neustadt, 177 Conn. 191,209 (1979).
"Under Connecticut law, the corporate shield may be disregarded either under the `instrumentality' of `identity' rules." Falcone v. Night Watchman, Inc., 11 Conn. App. 218,220 (1987). In the instant case, the plaintiff claims that the instrumentality rule applies. (Plaintiff's memorandum of law p. 3).
 "The instrumentality rule imposes individual liability for corporate actions upon a shareholder, director, or officer of a corporate entity that is, in economic reality, the instrumentality of the individual."
Campisano v. Nardi, 212 Conn. 282, 291 (1989).
 We have consistently held that "[t]he instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.'"
Id. at 291-92 (citations omitted).
The plaintiff has alleged in the third paragraph of count one that: "The individual defendant is the majority and/or sole stockholder of the defendant corporation and the defendant corporation owns all of the stock of its subsidiary corporations. The individual defendant controls and dominates the business affairs and decision making of the defendant corporation and its subsidiaries thereby depriving the defendant corporation and its subsidiaries of an independent will or existence." These allegations are merely conclusions of law with insufficient facts to support them. The plaintiff has alleged no other facts regarding the individual defendant's CT Page 834 control over the corporation. The plaintiff has failed to allege facts sufficient to satisfy the first element of the instrumentality rule, control, and therefore, the plaintiff has failed to allege facts sufficient to pierce the corporate veil and thereby hold the defendant Steiner personally liable.
Accordingly, the defendants' motion to strike counts one through seven as to the defendant Steiner should be and is granted.
Count One: Promissory Estoppel
The defendants argue that count one "fail(s) to state a claim for promissory estoppel in that defendants' alleged promise was too vague and indefinite." Count one alleges, inter alia, that the plaintiff has been offered various business opportunities which he has declined due to the defendants' promises and assurances of equity participation in the defendant corporation and its subsidiaries and further that said representations "were made for the purposes of inducing the plaintiff to remain affiliated with the defendants and its corporate subsidiaries, all to his loss and damage."
"[U]nder the doctrine of promissory estoppel `[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213 (1987) [quoting Restatement (Second), Contracts 90 (1973)]. The plaintiff has not alleged that the representations made by the defendants were ones which the promisor should reasonably expect to induce action or forbearance. Furthermore, "[a] fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Id. The plaintiff has failed to allege a "clear and definite promise." For the above reasons the defendants' motion to strike count one should be and is granted as to the remaining defendant GHM.
Count Two: Negligent Misrepresentation Count Three: Fraudulent Representation
The defendants argue in support of the motion to strike counts two and three that the defendants' alleged false statement, that the plaintiff would become an equity participant in GHM, "is too vague and indefinite that as a matter of law [the] plaintiff could not possibly have relied upon it as either an intentional or a negligent misrepresentation." (Defendants' memorandum at p. 13). The CT Page 835 defendants further argue that the plaintiff "does not allege how much equity he was promised, or when he would receive it, or any other definite statement of fact. . . ." (Defendants' memorandum at p. 13).
Negligent Misrepresentation
The Connecticut Supreme Court "has long recognized liability for negligent misrepresentation . . . even in innocent misrepresentation of fact `may be actionable if the declarant has the means of knowing, ought to know, or has a duty of knowing the truth.'" D'Ulisse-Cupo, 202 Conn. at 217
(citations omitted). "The governing principles are set forth in similar terms in 552 of the Restatement Second of Torts (1979): "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id. at 217-18.
Count Two incorporates paragraphs one through five of the first count and states "[t]he aforesaid representations were made negligently and carelessly by the defendants." Paragraphs one through five of the first count allege, inter alia, that "the plaintiff has had various business opportunities which he has declined due to promises and assurances from the defendants of equity participation in the defendant corporation" and the "plaintiff relied on said representations, which were made for the purpose of inducing the plaintiff to remain affiliated with the defendants . . . all to his loss and damage." "A representation about a promise to something in the future, when linked with a present intention not to do it, is a false representation." Kavarco v. T. J. E., Inc., 2 Conn. App. 294, 300 (1984). Count two sets forth sufficient facts to allege an action for negligent misrepresentation under the requirements of D'Ulisse-Cupo,202 Conn. at 217-18.
The defendants argue that the alleged false statement is so "indefinite that as a matter of law the plaintiff could not possibly have relied upon it as either an intentional or a negligent misrepresentation." (Defendants' Memorandum at 13). "`The question whether the plaintiff relied on the misrepresentations of the defendant is ordinarily a matter of fact, to be decided by the trial court.'" Paull v. Coughlin,39 Conn. Sup. 467, 468 (1983) (citations omitted). Therefore, the defendants' argument concerning the vagueness of the alleged false statement should be resolved by the trier of fact CT Page 836 and is not a sufficient reason for a motion to strike count two or three.
Fraudulent Misrepresentation
"`The essential elements of an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.'" J. Frederick Scholes Agency v. Mitchell, 191 Conn. 353,358 (1983) (citation omitted). The plaintiff has alleged in count three that the defendants' aforementioned "representations were false and known to be false by the defendants and made with the intent to deceive the plaintiff and did in fact so deceive the plaintiff in that no equity was ever transferred to the plaintiff by the defendants." Count three contains sufficient facts to support an action of fraudulent misrepresentation so as to withstand the defendants' motion to strike.
Count Four: CUTPA
The defendants argue that count four should be stricken for failure to state a claim under CUTPA because the "substantial weight of authority . . . favors the view that CUTPA does not apply to the employer-employee relationship." (Defendants' memorandum at p. 14). The plaintiffs argue that while several Superior Court cases have held that CUTPA does not apply to the employer-employee relationship, two Superior Court decisions have refused to strike counts on that ground. (Plaintiff's Memorandum at p. 7). Further, the plaintiff argues that the allegations in count four "remove the deceptive nature of the defendants' practices from the employer-employee relationship alone and touch and concern the trade or commerce of health care services in general." (Plaintiff's memorandum at p. 7-8).
Conn. Gen. Stat. 42-110b(a) provides "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. 42-110a(4) provides that:
 Trade of commerce means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."
In Kinter v. Nidec-Torin Corp., 662 F. Sup. 112
(D. CT Page 837837 Conn. 1987), the court held that the employer-employee relationship does not fit within the definition of trade or commerce under CUTPA. Several superior courts have also so held. See Krupa v. United Technologies, 2 CSCR d740 (July 1, 1987, Maloney, J.); Keneally v. Prime Computer, Inc.,3 CSCR 439 (March 7, 1988, Hale, J.); Himebaugh v. Garden Homes Management Corporation, 2 CSCR 748 (June 17, 1987, Healey, J.) In Delre Associates v. Adkins, 2 CSCR 1093 (September 28, 1987, Burns, J.), the court denied the defendants' motion to strike a CUTPA claim which arose in an employer/employee relationship. However, the case is distinguishable because the plaintiff there alleged the defendants set up a competing business while in the employ of the plaintiff corporation. Also, in Lanzetta v. Ferraro, 2 CSCR 427 (March 17, 1987) Gill, J.), the court denied a motion to strike a CUTPA claim where the plaintiff brought an action to recover real estate commissions from the defendant employer.
"`Although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purposes of CUTPA.'" Mill's Pride Inc. v. Somers, 2 CTLR 292, 295 (September 13, 1990, Spada, J.) (quoting Kenter v. Nidec-Torin Corp., 662 F. Sup. 112 (D.Conn. 1987).
The reasoning set forth by the courts that have not allowed CUTPA claims in actions involving the employer/employee relationship because the employer/employee relationship does not fit within the definition of trade or commerce under CUTPA is more applicable to the case at hand. The plaintiff's allegations involve a dispute which arose out of the employer/employee relationship. Therefore, the motion to strike the CUTPA claim of count four should be and is granted.
Count Five: Breach or Obligation To Pay Severance Compensation
The defendants argue that the fifth count fails to state a cause of action because it lacks any allegation of an agreement between the parties for severance pay. (Defendants' memorandum at p. 16). The plaintiff has alleged in the fifth count that "the plaintiff was to receive severance compensation" and that the "defendants have breached their obligation to the plaintiff by failing to pay the agreed upon severance compensation." (emphasis added). Construing the pleadings most favorably to the nonmovant, count five sufficiently alleges an oral agreement.
Count Six: Intentional Infliction Of Emotional Distress
The defendants argue that the sixth count fails to state CT Page 838 a cause of action because it does not allege the elements of an agreement and because it fails to state the elements of the tort of intentional infliction of emotional distress. (Defendants' memorandum at p. 17).
In order to establish a cause of action of intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253 (1986) (citations omitted).
Count six incorporates paragraphs one through eight of the fifth count and further alleges that "[t]he defendants have intentionally breached the severance agreement with the plaintiff and have done so recklessly, without care, concern, or regard for the plaintiff or his circumstances and have caused him mental distress and anguish, all to his further loss and damage." The plaintiff has not alleged that the defendants' conduct was extreme and outrageous, nor has the plaintiff alleged that his emotional distress was severe. The defendants' motion to strike count six should be and is granted.
Third Prayer For Relief
In the third prayer for relief the plaintiff claims "Double damages and attorney's fees pursuant to Conn. Gen. Stat. 31-72 to the extent that said damages are determined to be wages." The defendants argue that this prayer for relief should be stricken because Conn. Gen. Stat. 31-72 does not apply to wages for work not yet performed pursuant to an employment agreement. (Defendants' memorandum at pp. 18-19). The defendants also argues that because the plaintiff has alleged he was a "consultant" in paragraph two of the complaint, the plaintiff therefore, "cannot also be an employee for purposes of 31-72."
The plaintiff argues that his claim for damages pursuant to Conn. Gen. Stat. 31-72 does not relate to services not yet performed because the "claim for said damages results from the failure of the defendants to pay to the plaintiff the severance pay and accrued vacation pay which he has earned as compensation for labor and services performed by him." In addition, the plaintiff argues that the defendants cannot claim that the plaintiff is an "employee" for the purposes of a CUTPA claim but that the plaintiff is a "consultant" for purposes of CT Page 839 Conn. Gen. Stat. 31-72.
Conn. Gen. Stat. 31-72 provides, inter alia: "When any employer fails to pay an employee wage in accordance with the provisions of sections 31-71a to 31-71i . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court. . . ." Conn. Gen. Stat. 31-71a(3) defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. 31-71a(2) defines employee as "any person suffered or permitted to work by an employer. "
The plaintiff has alleged sufficient facts to support his status as an employee of the defendants where he has alleged in the first count that he "became affiliated as a consultant with the defendant corporation in an executive capacity with executive benefits and also became an officer and director of several of the defendant corporation's subsidiaries." Because the plaintiff asks for damages "pursuant to Conn. Gen. Stat. 31-72 to the extent that said damages are determined to be wages", the issue of whether the damages which plaintiff seeks are wages under the statute need not be decided under the present motion to strike. Therefore, the defendants' motion to strike the third prayer for relief should be and is denied.
SUMMARY
This court
1. grants defendants' motion to strike counts one through seven as to defendant Steiner because the plaintiff has failed to allege facts sufficient to pierce the corporate veil; 2. grants the defendants' motion to strike count one sounding in promissory estoppel as to the remaining defendant GHM; 3. denies the defendants' motion to strike count two sounding in negligent misrepresentation; 4. denies the defendants' motion to strike count three sounding in fraudulent misrepresentation; 5. grants the defendants' motion to strike count four alleging a claim under CUTPA as to the remaining defendant GHM; 6. denies the defendants' motion to strike count five which alleges a breach of an obligation to pay severance compensation; 7. grants the defendants' motion to strike count six CT Page 840 sounding in intentional infliction of emotional distress as to remaining defendant GHM; and 8. denies the defendants' motion to strike the third prayer for relief which claims damages pursuant to Conn. Gen. Stat. 31-72.
CLARK, J.