## MARIA D'ULISSE-CUPO *v.* BOARD OF DIRECTORS OF NOTRE DAME HIGH SCHOOL ET AL.
### (12943)

PETERS, C. J., DANNEHY, SANTANIELLO, CALLAHAN and KLINE, Js.

Argued December 4, 1986—decision released February 3, 1987

*Thomas E. Crosby*, for the appellants (defendants).

*Joseph D. Garrison*, with whom was *Nancy E. Fey*, for the appellee (plaintiff).

PETERS, C. J. This case arises out of the failure of a school board to rehire a nontenured teacher despite representations that she would receive a new employment contract. The plaintiff, Maria D'Ulisse-Cupo, filed a three count complaint against the defendants, the board of directors of Notre Dame High School and the principal of the school, George Schmitz, seeking damages premised on liability for breach of contract and negligent misrepresentation. The trial court rendered judgment against her after granting the motion of the defendants to strike all three counts of her complaint for failure to state a cause of action. Upon appeal to the Appellate Court, that court found error and remanded the case for further trial court proceedings on all counts. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 6 Conn. App. 153, 503 A.2d 1192 (1986). We granted certification at the request of the defendants and now conclude that the Appellate Court's judgment must be reversed with respect to the plaintiff's contract counts, so that further trial court proceedings will be limited to the plaintiff's tort claim only.

Since this appeal is before us pursuant to a motion to strike, we take the facts to be those alleged in the plaintiff's complaint and construe the complaint in the manner most favorable to the pleader. *Norwich* v. *Silverberg,* 200 Conn. 367, 370, 511 A.2d 336 (1986); *Mead* v. *Burns,* 199 Conn. 651, 655, 509 A.2d 11 (1986); *Cavallo* v. *Derby Savings Bank,* 188 Conn. 281, 283, 449 A.2d 986 (1982); *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 472, 427 A.2d 385 (1980); *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 550–51, 324 A.2d 919 (1973). " 'For purposes of appeal, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . .' " *Mead* v. *Burns,* supra; *DeMello* v. *Plainville,* 170 Conn. 675, 677, 368 A.2d 71 (1976); *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 (1973).

The plaintiff alleged the following facts in her complaint. From September, 1981, to June, 1983, she taught Spanish and Italian to ninth and tenth grade students at Notre Dame High School in West Haven. During that period, she was employed under an employment contract which expired in June, 1983. On or about March 21, 1983, the defendant Schmitz, the school principal, orally represented to the plaintiff, during a performance review, that "there would be no problem with her teaching certain courses and levels the following year, that everything looked fine for rehire for the next year, and that she should continue her planning for the exchange program" which she organized for the school. Shortly thereafter, during the week of April 11, 1983, Schmitz or his authorized representative posted a written notice on a bulletin board in the school stating: "All present faculty members will be offered contracts for next year." Upon her return from an exchange trip to Italy, the plaintiff was again informed that she would have a teaching contract for the following year. On

or about May 4, 1983, however, the plaintiff was told by school officials that, due to staff cutbacks in various departments, her teaching contract would not be renewed.

The complaint further alleged that Schmitz interviewed the plaintiff for a position in the English department on or about May 27, 1983. Schmitz told the plaintiff and other teachers that the defendants would do everything possible to avoid discharging them. Subsequently, instead of hiring the plaintiff for the position available in the English department, the defendants hired an outside applicant for that position. Furthermore, the defendants allegedly failed to explore alternative job opportunities for the plaintiff or to offer her any substitute teaching positions for which she was qualified and available.

The three counts of the plaintiff's complaint sought recovery of damages on the following legal theories: (1) breach of contract arising out of the defendants' failure to rehire the plaintiff despite oral and written promises of a new contract, on which the plaintiff relied to her detriment; (2) liability in tort because of negligent misrepresentions that the plaintiff would be rehired to teach for a third year, representations on which the plaintiff relied to her detriment; and (3) breach of contract arising out of the defendants' oral promises to avoid discharging teachers unnecessarily and to offer the plaintiff substitute teaching positions, promises on which the plaintiff relied to her detriment. The complaint further alleged that, as a result of these wrongful actions by the defendants, the plaintiff suffered the following damages: the stress of unemployment, loss of esteem, damage to her professional career and reputation, lost wages and fringe benefits, and mental and physical pain and suffering.

The defendants moved to strike the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court granted the motion as to all three counts for reasons articulated in its memorandum of decision. On the first count, which alleged, inter alia, that the plaintiff had been wrongfully discharged, the court concluded that no cause of action had been stated because the doctrine of wrongful discharge protects only employees at will. *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 569, 479 A.2d 781 (1984); *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 477, 427 A.2d 385 (1980). Relying on the allegations in the complaint, the court found that the plaintiff was not an employee at will, but rather an employee hired pursuant to a term contract of fixed duration. The court therefore found that the plaintiff had not been discharged from her employment; she simply had not been rehired upon the expiration of her contract. The court struck the second count, sounding in negligent misrepresentation, because the plaintiff did not allege that the defendants had "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." 3 Restatement (Second), Torts (1979) § 552. The court determined that the third count, which alleged a further claim for breach of contract, failed to establish such a claim because there was no allegation that the defendants had offered the plaintiff future employment or that she had accepted such an offer. Alternatively, the court found that the third count failed to state a claim grounded in detrimental reliance because there was no allegation that the defendants, by virtue of their representations to the plaintiff, had "reasonably expect[ed] to induce action or forbearance" of a definite and substantial character. 1 Restatement (Second), Contracts § 90 (1979).

In reviewing the judgment of the trial court, the Appellate Court addressed each count of the complaint

separately. The court initially determined that the first count, although cast as a claim for wrongful discharge, was in fact a claim based on a theory of implied contract arising out of the defendants' alleged promises to rehire the plaintiff. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 157.[1] The complaint contained allegations that the defendants had made representations concerning rehiring and promises that "all present faculty members will be offered contracts for next year." The court determined that these allegations, coupled with the allegation that the plaintiff had relied on these promises to her detriment, formed the basis of an actionable claim for breach of an implied promise to rehire. Id., 159.[2] With respect

---

[1] The plaintiff framed the first count, at least in part, as a claim for wrongful discharge. The Appellate Court first interpreted this claim as an allegation of wrongful termination arising out of the defendants' failure to rehire the plaintiff. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 6 Conn. App. 153, 157, 503 A.2d 1192 (1986). The court therefore analyzed this claim in the context of recent case law in this state addressing the doctrine of wrongful discharge. See *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984); *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 499 A.2d 64 (1985). The court's reliance on this line of cases, particularly on *Finley* v. *Aetna Life & Casualty Co.,* supra, was misplaced because the right to recover in tort for wrongful discharge extends only to employees at will. As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will. *Somers* v. *Cooley Chevrolet Co.,* 146 Conn. 627, 629, 153 A.2d 426 (1959); *Fisher* v. *Jackson,* 142 Conn. 734, 736, 118 A.2d 316 (1955). The doctrine of wrongful discharge, a narrow exception to this rule, provides that an employer may be liable for discharge of an at will employee at least in cases "where the discharge contravenes a clear mandate of public policy." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 474. The plaintiff in this case, who was employed by the defendants pursuant to a term contract of fixed duration, was not an employee at will. She therefore was not entitled to invoke the doctrine of wrongful discharge.

[2] The Appellate Court incorrectly analyzed the first and third counts based on a theory of breach of an implied in fact contract. "A contract implied in fact, like an express contract, depends on actual agreement." *Therrien* v. *Safeguard Mfg. Co.,* 180 Conn. 91, 94, 429 A.2d 808 (1980); *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 406, 356 A.2d 181 (1974);

to the second count, the court concluded that, even absent formal invocation of all of the language of § 552 of the Restatement Second of Torts (1979), the plaintiff's allegation of negligent misrepresentation was sufficient to withstand a motion to strike. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 160. Addressing the third count, the court found that, although the plaintiff had not pleaded that the defendants "reasonably expected to induce action or forbearance" in making various representations to the plaintiff, that count likewise stated a claim for breach of an implied contract based on a theory of promissory estoppel. Id. The Appellate Court therefore set aside the judgment of the trial court and remanded the case for further proceedings.

In their appeal to this court following our granting of their petition for certification, the defendants challenge each of these conclusions of the Appellate Court. We agree with their claims with regard to the contract counts, counts one and three, but we disagree with respect to the second count alleging liablity for tortious misrepresentation.

I

We will address jointly the defendants' attack on counts one and three, both of which contest the Appellate Court's conclusions that the various oral and written representations made by the defendants are promises that are enforceable under the doctrine of promissory estoppel. In contesting the first count, the defendants

*Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957). Neither the first count nor the third count alleges that the defendants "agreed, either by words or action or conduct, to undertake any form of actual contract commitment" to the plaintiff. *Therrien* v. *Safeguard Mfg. Co.,* supra, 94–95. Thus, the plaintiff's only viable claim for recovery in contract rests on the doctrine of promissory estoppel. We therefore review the legal sufficiency of the first and third counts by analyzing them as claims based on promissory estoppel.

maintained that the oral and written representations they had made regarding their intent to rehire the plaintiff for a third year did not rise to the level of promises which are enforceable based on detrimental reliance. They further argued that the third count should also be stricken because their subsequent oral representations to the plaintiff, that they would make every effort to avoid discharging teachers and to find alternate employment for the plaintiff, likewise did not amount to promises on which the plaintiff could reasonably have relied. We find both of these arguments persuasive.

Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) § 2.9, p. 89; A. Corbin, Contracts (1963) § 193, p. 188. This court has recognized, however, the "development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor; see Restatement (Second), Contracts § 90 (1973)." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 475; *Hebrew University Assn.* v. *Nye,* 148 Conn. 223, 232, 169 A.2d 641 (1961); see A. Corbin, supra, § 194, p. 193. Section 90 of the Restatement Second states that under the doctrine of promissory estoppel "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. E. Farnsworth, supra, § 2.19, p. 95.

In reviewing the legal sufficiency of the claims based on detrimental reliance alleged in the first and third counts, the question before us is whether the various oral and written statements made by the defendants constituted promises within the meaning of § 90 of the Restatement Second. Count one alleges three distinct representations on which the plaintiff allegedly relied to her detriment. The first is the defendant Schmitz's oral representation "that there would be no problem with her teaching certain courses and levels the following year, that everything looked fine for her rehire for the next year, and that she should continue her planning for the exchange program." The second is the notice posted on the school bulletin board stating: "All present faculty members will be offered contracts for next year."[3] The third is a subsequent representation to the plaintiff again informing her that she would have a contract for the following year.

We agree with the defendants that these representations do not invoke a cause of action for promissory estoppel because they are neither sufficiently promissory nor sufficiently definite to support contractual liability. The statements alleged to be actionable in the first count were, on their face, no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future. There is no claim that these representations were not made in good faith. Contrary to the plaintiff's assertion, these representations manifested no present intention on the part of the defend-

---

[3] The plaintiff seeks to equate this notice with statements regarding terms of employment made by an employer in a personnel policy manual. In *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208 (1987), we concluded that it is a question of fact for the jury whether statements made in a policy manual constitute a binding employment contract which modifies an otherwise at will employment relationship. We conclude that in this case the general notice regarding rehiring that was posted on the bulletin board is not the equivalent of such statements made in a policy manual.

ants to undertake immediate contractual obligations to the plaintiff. See, e.g., *Local 1330, United Steel Workers* v. *United States Steel Corporation,* 631 F.2d 1264, 1279 (6th Cir. 1980); *Abbington* v. *Dayton Malleable, Inc.,* 561 F. Sup. 1290, 1297 (S.D. Ohio 1983), aff'd, 738 F.2d 438 (6th Cir. 1984); *A & M Fix-It, Inc.* v. *Schwinn Bicycle Co.,* 494 F. Sup. 175, 178 (D. Utah 1980); *Pacific Cascade Corporation* v. *Nimmer,* 25 Wash. App. 552, 559, 608 P.2d 266 (1980). Furthermore, none of the representations contained any of the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and her salary and fringe benefits. *Augeri* v. *C.F. Wooding Co.,* 173 Conn. 426, 429–30, 378 A.2d 538 (1977); A. Corbin, supra, § 95. At most, the defendants made representations to the plaintiff concerning the expectation of a future contract, but they stopped short of making the plaintiff a definite promise of employment on which she could reasonably have relied.

The oral promises alleged in the third count, on which the plaintiff also claims to have relied to her detriment, are even more tenuous than those alleged in the first count. After determining that student enrollment levels had declined, the defendant Schmitz allegedly told the plaintiff, in May of 1983, that the defendants would do everything possible to avoid discharging teachers. Nonetheless, the defendants subsequently hired an outside applicant, rather than the plaintiff, for a one year position available in the English department. The defendants also failed to offer the plaintiff substitute teaching positions for which she was allegedly qualified and available. At oral argument before this court, although the defendants conceded having made conciliatory statements of this nature to the plaintiff and other teachers, the defendants continued to maintain their position that these representations were not

intended as a guarantee of future employment on which the plaintiff or others were intended to rely. Possibly, as the plaintiff contends, the defendants did not do everything within their power to retain the plaintiff as an employee. In light of the vagueness and indefiniteness of their representations, however, and our underlying concern that "courts should not lightly intervene to impair the exercise of managerial discretion"; *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 477; we conclude that an offer to use best efforts does not, in and of itself, impose contractual liability in the circumstances alleged in this case.

Because we disagree with the Appellate Court in its characterization of the plaintiff's complaint with respect to counts one and three, we reverse its judgment relating thereto. We note, for the sake of completeness, that the plaintiff has abandoned any claim that she may recover from the defendants, under count one, on a theory of wrongful discharge.[4] No further pro-

---

[4] Practice Book § 4013 (a) (1) (formerly § 3012 [a]), made applicable to proceedings after certification by Practice Book § 4140 (formerly § 3158), provides in relevant part: "If the appellee wishes to present for review alternate grounds upon which the judgment may be affirmed, or if he wishes to present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . he shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of issues." An appellee who is aggrieved by the decision of the Appellate Court may file a cross petition for certification within ten days of the filing of the appellant's petition. Practice Book § 4131 (formerly § 3141); *State* v. *Torrence,* 196 Conn. 430, 434 n.6, 493 A.2d 865 (1985); see *Hartford* v. *Freedom of Information Commission,* 201 Conn. 421, 433, 518 A.2d 49 (1986). If the plaintiff wished to pursue her claim for wrongful discharge, she should have filed in this court a cross petition for certification, which she failed to do. Moreover, the plaintiff conceded at oral argument that she was not an employee at will. Having been employed under a term contract, she was not within the class of persons protected by the doctrine of wrongful discharge. She further conceded that the use of the term "wrongful discharge" in paragraph twelve of her complaint was inaccurate because she was never discharged; she simply was not rehired upon the expiration of her contract.

ceedings are warranted, therefore, with respect to counts one and three.

## II

The defendants' final challenge to the judgment of the Appellate Court claims error in its ruling that the second count states a cause of action in tort for negligent misrepresentation. The second count incorporated by reference all but one of the factual allegations detailed in the paragraphs set forth in the first count, and further alleged that "[t]he defendants negligently misrepresented the facts to the plaintiff, causing her damages as pled." The defendants contend that this count must be stricken because it does not allege that the defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information," which is the language used in § 552 of the Restatement Second of Torts (1979) to define negligence for purposes of such a claim. According to the defendants, the mere allegation that "[t]he defendants negligently misrepresented the facts to the plaintiff," even coupled with the facts alleged in the first count in support of that claim, was insufficient to sustain a cause of action for negligent misrepresentation. We disagree.

This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact "may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 346, 232 A.2d 307 (1967); see also *J. Frederick Scholes Agency* v. *Mitchell,* 191 Conn. 353, 359, 464 A.2d 795 (1983); *Johnson* v. *Healy,* 176 Conn. 97, 102, 405 A.2d 54 (1978); *Warman* v. *Delaney,* 148 Conn. 469, 473, 172 A.2d 188 (1961); *Boucher* v. *Valus,* 6 Conn. Cir. Ct. 661, 665–66, 298 A.2d 238 (1972). The governing principles are set forth in similar terms in § 552 of the Restate-

ment Second of Torts (1979): "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." See also *Ultramares Corporation* v. *Touche,* 255 N.Y. 170, 174 N.E. 441 (1931); *Glanzer* v. *Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922); W. Prosser & W.P. Keeton, Torts (5th Ed. 1984) § 107, p. 745.

The defendants argue, initially, that if they cannot be held liable in contract for their representations based on promissory estoppel, they likewise cannot be held liable in tort for negligent misrepresentation. For purposes of a cause of action for negligent misrepresentation, however, the plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information. The gravamen of the defendants' alleged negligence is that the defendants made unconditional representations of their plans to rehire the plaintiff, when in fact the defendants knew or should have known that hiring plans would be contingent upon student enrollment levels for the following year.[5] *Richard* v. *A. Waldman & Sons, Inc.,* supra, 346; 3 Restatement (Second), Torts (1979) § 552, comment. The defendants ultimately relied on declining student enrollment levels as the justification for the staff cutbacks that resulted in the elimination of the plaintiff's teaching position. If the plaintiff's complaint

---

[5] The complaint alleges generally that the "plaintiff relied to her detriment on these representations" and does not specifically describe the nature of the plaintiff's detrimental reliance. The plaintiff explained at oral argument that her reliance was in the nature of forbearance. She did not search for other employment, relying instead on the defendants' representations that she would be rehired.

otherwise contains the necessary elements of negligent misrepresentation, it survives a motion to strike even though the first and third counts grounded in promissory estoppel must fall.

The defendants further object to the allegation of negligent misrepresentation on the ground that the complaint fails to explain the nature of the defendants' negligence, and instead alleges, in mere conclusory fashion, that the defendants "negligently misrepresented" certain facts. The defendants insist that the second count is fatally defective because it lacks an express allegation that the defendants "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." 3 Restatement (Second), Torts (1979) § 552. They offer no authority, however, for the proposition that the pleader must use the precise language of the Restatement Second to establish a claim for negligent misrepresentation. Although numerous courts have quoted directly from the Restatement Second in describing the elements of an action for negligent misrepresentation, we have discovered no cases, nor have the defendants furnished any, in which a court has struck a claim for negligent misrepresentation merely because the complaint lacked such an allegation. *Stagen* v. *Stewart West Coast Title Co.,* 149 Cal. App. 3d 114, 119, 196 Cal. Rptr. 732 (1983); *Eby* v. *York-Division, Borg-Warner,* 455 N.E.2d 623, 628 (Ind. App. 1983); *Tober's, Inc.* v. *Portsmouth Housing Authority,* 116 N.H. 660, 663, 367 A.2d 603 (1976); *Berry* v. *Playboy Enterprises, Inc.,* 195 N.J. Super. 520, 531, 480 A.2d 941 (1984), cert. denied, 99 N.J. 231, 491 A.2d 720 (1985); *Rosenthal* v. *Blum,* 529 S.W.2d 102, 104 (Tex. Civ. App. 1975). To the contrary, the case law in numerous jurisdictions suggests that courts liberally construe the pleadings in a way so as to sustain such a claim, particularly where the allegations in a complaint indicate, on their face, that an employer

failed to exercise reasonable care in making represen-
tations to an employee on which the employee relied
to his detriment. *McAfee* v. *Rockford Coca-Cola Bottling
Co.*, 40 Ill. App. 3d 521, 527, 352 N.E.2d 50 (1976); *Eby*
v. *York-Division, Borg-Warner,* supra, 629; *Berry* v.
*Playboy Enterprises, Inc.*, supra, 531–32; see also
*Muraoka* v. *Budget Rent-A-Car, Inc.*, 160 Cal. App. 3d
107, 119, 206 Cal. Rptr. 476 (1984); *First National
Bank* v. *Collins,* 44 Colo. App. 228, 230, 616 P.2d 154
(1980); *Rosenthal* v. *Blum,* supra, 105.

In our view, the plaintiff's allegation that "the
defendants negligently misrepresented the facts to the
plaintiff" necessarily implied that the defendants did
not exercise reasonable care or competence in com-
municating with the plaintiff about her prospects for
reemployment.[6] Although the complaint could have
alleged the nature of the defendants' negligence more
precisely, the lack of linguistic specificity does not war-
rant striking the second count. As the Appellate Court
noted, under the rules of practice governing pleading,
a party may plead legal effect as long as the pleading
"fairly [apprises] the adverse party of the state of facts
which it is intended to prove." Practice Book § 109;
see Practice Book § 108. We agree with the Appellate
Court that the facts alleged by the plaintiff in this case
fairly apprised the defendants of her intent to pursue
a claim for negligent misrepresentation. Moreover, if
the defendants were in doubt as to the nature of this
claim or the legal theory underlying it, they could "have
sought a more particular description of the negligence
charged" by filing a request to revise. *Scribner* v.
*O'Brien, Inc.*, 169 Conn. 389, 399, 363 A.2d 160 (1975);

---

[6] Negligence has been defined as the "failure to use such care as a rea-
sonably prudent and careful person would use under similar circumstances;
it is the doing of some act which a person of ordinary prudence would not
have done under similar circumstances . . . ." Black's Law Dictionary (5th
Ed. 1979).

Practice Book § 147; *Fuessenich* v. *DiNardo,* 195 Conn. 144, 148, 487 A.2d 514 (1985); *Manning* v. *Michael,* 188 Conn. 607, 617, 452 A.2d 1157 (1982). The defendants in this case never filed such a request. We conclude, therefore, that the Appellate Court correctly determined that the plaintiff's allegation of negligent misrepresentation contained in the second count is sufficient to withstand a motion to strike. We affirm their holding that further proceedings are required on the second count.

The judgment of the Appellate Court is reversed in part and the court is directed to remand the case for further proceedings in the trial court with respect to count two only.

In this opinion the other justices concurred.