[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a collection action on an installment note. The note was assigned to the plaintiffs Laura Robitaille and Mary Parenteau by the New England Bank Trust Company after Laura Robitaille paid off the note to the bank. The defendants Guy Downey and Yves Downey, along with Laura Robitaille's son, David Robitaille, (who is not a party in this suit) were The makers of the note.
In September, 1984, the defendants Guy and Yves Downey began discussion with David Robitaille, Laura Robitaille's son and Mary Parenteau's grandson, about entering into a business relationship. It was agreed that the three would purchase a service station and operate it under the name of J E Gulf, Incorporated. In order to obtain the necessary funds to purchase the business it became necessary to obtain financing from the New England Bank and Trust Company. Before the bank would lend the three any money the plaintiffs had to agree to guarantee the note. On September 25, 1984, the plaintiffs signed a "Loan Guarantee Agreement" with the New England Bank and Trust Company, in which they agreed to guarantee payment of the note between the bank and the defendants in the event that the note was in default. Four days later, on September 29, 1984, Guy and Yves Downey and David Robitaille as individuals and in their corporate capacities as directors of J E Gulf signed an "Installment Loan Note" with the New England Bank and Trust Company. The principal amount of the note and the amount guaranteed was $60,000.
The defendants and David Robitaille ran the business from September 1984 until sometime in 1987 when the corporation began to have financial difficulties. In mid 1987 the Internal Revenue Service placed a lien in the amount of $52,000 on the corporation for failure to pay taxes. Eventually, the defendants paid $12,000 of the I.R.S. debt. At about the same time, Francis Maffe, the landlord of the property on which the service station was located contacted the defendants and informed them that the lease would not be CT Page 10664 renewed unless either David Robitaille or the Downeys were removed from the business, and when David was informed of this conversation he agreed to leave the business.
When David Robitaille's mother, Laura Robitaille, learned of this on July 24, 1987, she contacted the defendants and stated that she was interested in taking over the business. During the phone conversation Laura Robitaille indicated that "she didn't need their stinking money" and that she and her son could run the business. Based on these representations by Laura Robitaille, the defendants called the corporate attorney and scheduled a corporate meeting for the following day to effectuate the transfer of the business to Laura Robitaille.
On July 25, 1987, a corporate meeting was held at the office of the corporate attorney, George Bickford. Present at the meeting were Guy Downey, Yves Downey, David Robitaille, Danny Robitaille (David's brother) and Attorney Bickford. At the meeting the defendants resigned as officers of the corporation and turned over their keys to David and Danny Robitaille. At the meeting Danny Robitaille indicated that his mother, Laura Robitaille, was going to take over the business and that he, Danny would be involved in the day to day operation of it. Danny subsequently prepared a memorandum which was submitted to Attorney Bickford (Defendant's Exhibit 2) indicating that Laura Robitaille was to be the President and Treasurer of the Corporation and that he, Danny was to be the Vice President and Secretary. Laura was to have five hundred (500) shares and Danny two hundred fifty shares of the Corporate stock. At the same meeting the following assets were turned over to Danny, David and Laura Robitaille by the defendants:
 1. $5,800 in inventory stock including such things as belts, hoses and auto parts,
2. approximately 1,000 gallons of fuel;
 3. a tow truck valued at $15,000 with an outstanding debt owed of $5,000;
 4. $17,000 of office furniture and equipment such as wheel balances, scopes, brake equipment, etc.
5. approximately $40,000 in accounts receivables.
In 1984 the defendants had also paid the previous owners of the business approximately $30,000 for the goodwill of the business. CT Page 10665
After the corporate meeting the defendants had no further dealings with the business or the Robitailles. Laura Robitaille became active in the day to day operation of the business. Mr. Maffe testified that Laura Robitaille directly made payments to him for the lease of the premises and that she frequently discussed different aspects of the business with him such as pricing, signs, and promotional matters. She had a good grasp of the business and played an active part in it.
Trouble arose when the I.R.S. became dissatisfied with the payment schedule of the corporation's back taxes prompting the I.R.S. to close down the service station in late October. After the station was closed, payments on the note were no longer made and the bank notified the plaintiff, Laura Robitaille, that the loan was in default. No evidence was brought to the court's attention as to whether the bank had notified the Downeys' that the note was in default. On December 22, 1987, Laura Robitaille paid the bank the balance on the note in the amount of $47,989.52. In exchange for her payment the bank assigned their rights in the note to Laura Robitaille and Mary Parenteau. After the assignment of the note to Laura Robitaille and Mary Parenteau this suit was brought to collect the $47,989.52 from the defendants. The defendants have filed a counterclaim for the $12,000 which they paid to the Internal Revenue Service. Since Laura Robitaille is the one who paid the balance on the note, she is the only person who could claim a loss and who may recover. Hereafter any reference made to the plaintiff denotes only her unless otherwise noted.
The note between the bank and the defendants is subject to the provisions of Article Three of the Uniform Commercial Code as found in the Connecticut General Statutes in Sections42a-3-101, et sequitur. Section 42a-3-104 (1) states:
 Any writing to be a negotiable instrument within this article must be (a) signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money. . .(c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.
The "Installment Loan Note" meets the requirements as set out above and is thus subject to all of the provisions of the code including the codes' provisions on defenses.
Laura Robitaille's suit is based on the bank's assignment of the note to her. A bill or note may be transferred by assignment. Cheshire Commercial Corporation v. CT Page 10666 Messier, 278 A.2d 413, 414 (D.C. Conn., 1971). "An assignment of a bill or note merely means a transfer of the title to the instrument and generally an assignee takes only such title as his assignor had, subject to all defenses available against his assignor." Cheshire, supra, 415. Laura Robitaille therefore is claiming the rights that the New England Bank and Trust had against the Downeys subject to any defenses that the Downeys might attempt to raise.
The defendants raised two defenses. The first is raised in the defendants' special defenses and is discharge. The second, while not pled as a special defense, was raised in their counterclaim as the defense of estoppel.
DISCHARGE
In their special defense, the defendants allege that the plaintiffs had "received items of value that far exceeded the debt claimed and as such such debt has been paid." The crux of this defense is that the defendants have been discharged from their debt.
The bank was a holder of the note for which they paid value and which they took in good faith without notice of any claims or defenses. As a holder in due course the bank obtains the rights of a holder in due course as defined in General Statutes Sec. 42a-3-305. In accordance with Cheshire Commercial Corporation, supra, Laura Robitaille would have the rights of a holder in due course subject to any defenses allowed by General Statutes Sec. 42a-3-305, which states in pertinent part:
 To the extent that a holder is a holder in due course he takes the instrument free from. . . all defenses of any party to the instrument except. . . any other discharge which the holder has notice when he takes the instrument.
General Statutes Sec. 42a-3-305.
Since the plaintiff is suing on the assignment and stands in the shoes of the bank, for the defense of discharge to be effective the bank, pursuant to Sec. 42a-3-305, must have notice of the discharge. There was no evidence that the bank was a party to the conversations or meetings in which the defendants turned over the business to the Robitailles in exchange for a complete discharge from their debt. This being the case, the bank did not have notice of any discharge and therefore the defense of discharge must fail. CT Page 10667
ESTOPPEL
Although the defendants did not plead estoppel as a special defense, estoppel, as distinguished from waiver, need not be specially plead." DelVecchio v. DelVecchio, 146 Conn. 188,195, 148 A.2d 554 (1959). The court in John F. Epina Realty, Inc. v. Space Realty. Inc., 194 Conn. 71,480 A.2d 499, (1984) sets forth the elements of estoppel stating:
 [T]here are two elements which must be established in order to find an estoppel: one party must do or say something that is intended or calculated to induce another into believing in the existence of certain facts and to act upon that belief, and the other party must thereby actually change his position or do some act to his injury which he would otherwise not have done.
John F. Epina Realty, Inc., supra 85. Promissory estoppel is only to be enforced where injustice would occur without its application. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213, 520 A.2d 217 (1987).
While the defendants did not plead estoppel as a special defense, their counterclaim alleges the elements of estoppel and the facts as presented at trial are sufficient to support a finding of estoppel. The defendants argue that the plaintiff Laura Robitaille represented to them that if they transferred the service station to her and her sons, she would assume all the corporate debt including the note which is the basis of this suit. Based on these representations the defendants turned over their keys to the service station and the assets thereof. It is the defendants position that based on these actions the plaintiff should be estopped from asserting a cause of action against the defendants despite the fact that technically a claim could be made.
This is a case which clearly points to the application of the doctrine of promissory estoppel to avoid injustice. The defendants relied on the promise of the plaintiff to discharge their liability on the note when they turned over the keys and assets of the business to her sons. Furthermore after the business was transferred, the plaintiff took an active role in the operation of the service station as evidenced by Mr. Maffe's testimony. Based on the plaintiff's representations to the defendants, the defendants transferred control of the business to the plaintiff and made no further payments on the note. If the plaintiff is allowed to recover, certainly justice will not be served. The defendants have given the plaintiff in excess of $50,000 for what they had thought was CT Page 10668 their discharge on the note. If the plaintiff is allowed to recover from the defendants she will in essence be getting paid twice. In the furtherance of justice, applying the doctrine of promissory estoppel, judgment shall enter for the defendants on the complaint.
The defendants, in their counterclaim, seek to recover the $12,000 that they paid the I.R.S. to satisfy the IRS, lien placed on the business. The $12,000 paid by the defendants was payment on a corporate debt. The corporation is not a party to this suit and no evidence was given on any theory for piercing the corporate veil and holding the plaintiffs liable for this. Therefore judgment shall enter for the plaintiffs on the defendants counterclaim for the I.R.S. payment. Costs are not assessed to either party.
HON. LAWRENCE KLACZAK SUPERIOR COURT JUDGE