[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The decision in this foreclosure action is shaped largely by the scope of two summary judgments, the first entered by Judge Katz on January 10, 1991 as to liability only and the other by Judge Ryan on August 1, 1991 as to the First and Third counts of the defendants' counterclaim. Judge Ryan likewise found it necessary to construe the scope of Judge Katz's order. In so doing, he found that the judgment for the plaintiff as to liability embraces the First Special Defense and because it contains the same allegations as the First Count of the counterclaim the judgment applied to it as well. Thus, at minimum, this court has already ruled that: (1) the defendants are liable to pay the principal of the mortgage: (2) the interest rate provided for in the mortgage did not cease to exist upon the merger of Fidelity Trust Company and the plaintiff, Connecticut National Bank: and (3) the Federal Debt Collection Act (15 U.S.C. § 1692 b-k) does not apply to this mortgage. Because this court construes the summary judgments to control the validity of the interest rate specified, no further CT Page 10778 inquiry into this particular issue is warranted under principles governing the "law of the case". Breen v. Phelps 186 Conn. 86, 99.
The court having bifurcated the issues relating to the formal judgment (strict or foreclosure by sale) and awardable attorney's fees, there remains for the court's consideration only the following issues: (i) estoppel by the plaintiff and counter-estoppel by the defendant; (ii) the applicability of C.G.S. Sec. 42-150
aa; (iii) whether the plaintiff's conduct constitutes a violation of CUTPA and (iv) whether under all the circumstances the court should grant relief from foreclosure pursuant to its equitable power to do so.
I. ESTOPPEL
While a fair construction of Judge Katz's order would permit the inference that she found no genuine issue as to any material fact relating to liability, including the issue of estoppel, the subject merits discussion because the facts which the defendants claim form its basis are also largely the basis for their CUTPA claim.
The defendants contend that over the course of time the plaintiff bank made promises to them on which they relied to their detriment. In order to constitute estoppel, the evidence must show that the plaintiff's conduct, by its acts and words, were calculated to mislead, deceive or induce the defendants to act to their detriment, Jensen v. Nationwide Insurance Co. 158 Conn. 251,262 or to accomplish the same result through gross negligence amounting to constructive fraud, Bland v. Bergman, 123 Conn. 61,65.
In support of this estoppel theory the defendant, Ridgely Brown, testified that he visited the bank on two occasions. On the first trip he explained his difficulties in selling the mortgaged premises and asked for more time to do so. He indicated that the bank officer said he would not force a sale of the property with such words as "don't worry about it", "roll-it over", "the bank doesn't want a fire sale". On the second occasion Mr. Brown visited the bank to inquire about the status of his loan to obtain assurance that no demand would be made. The bank told him that they would "work with him".
Testing these statements by the standard given in D'Ulisse-Cupo v. Board of Directors of Notre Dame High School 202 Conn. 206
none of these representations rise to the level of a promise. The "promises" in D'Ulisse-Cupo, supra regarding re-employment of a school teacher were much more specific than those alleged here but still insufficient to satisfy the plaintiff's claim of estoppel. CT Page 10779
The defendants further assert that the plaintiff is estopped to foreclose because it did not call the note on its due date and because of its continued acceptance of late payments. Citing S.H.V.C. v. Roy 188 Conn. 503 the plaintiff argues that acceptance of late payments does not constitute a waiver of its right to foreclose or make demand since the note which the defendants signed specifically includes a non-waiver clause and expressly allows the plaintiff to forebear without losing its right to enforce the terms of the obligation.
The doctrine of estoppel also requires the court to evaluate the conduct of the defendant as the party seeking the benefit of the rule must show that he exercised due diligence and that he not only did not know of the true state of things but also lacked any reasonable means to acquire the knowledge. S.H.V.C. Inc. v. Roy supra at 511. As put by the Appellate Court in the D'Ulisse-Cupo case supra at 213: "a fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance". Thus, the defendants must show that they made diligent efforts to determine the truth of the situation with respect to their loan. They said that they did this when Mr. Brown visited the bank to obtain the loan officer's assurances. The plaintiff argues that no promissory language was used and that the defendants made no effort to memorialize any agreements not to foreclose or to continue to accept late payments into promissory language. The defendants do not dispute these assertions. They have failed in their burden of proof.
II. THE APPLICABILITY OF C.G.S. 42-150aa
Despite presentation of legislative history to the contrary the Appellate Court in Liapes v. Beaulieu 18 Conn. App. 329 ruled that Section 42-150aa does not apply to mortgage loans in excess of $25,000. Instead the court applied the definitions contained in chapter 742 of the General Statutes which relate to consumer loans for purchases associated with personal or household uses in order to determine that the Liapes loan was not a consumer loan but a loan secured by a mortgage on real estate. That court's ruling is determinative of this issue and precludes acceptance of the defendants bold invitation to ignore its binding effect.
III. THE CUTPA CLAIM
For the purpose of this decision I join those of my colleagues who believe that C.G.S. Section 42-110 et. seq. (CUTPA) applies to a bank-borrower relationship, Eylward v. Bank of Boston Connecticut 17 CLT 35 (Burns, J.) at least when "engaged in a consumer oriented activity", Economic Development Association v. Citytrust 17 CLT 16 (Dranginis, J.) CT Page 10780
In assessing whether the plaintiff's conduct amounted to a violation of CUTPA each of its claimed acts of estoppel (Part I) have been considered in addition to the following acts which the defendants likewise characterize: (i) the plaintiff failed to give notice that it was changing the interest rate index; (ii) the plaintiff failed to bargain in good faith for a new rate and instead imposed a new rate in secret; (iii) the plaintiff induced the defendants (a) to hold on to their property past a capital gains date, and (b) to improve it; (iv) the plaintiff's required principal pay-downs when the note did not authorize such demands: (v) the plaintiff hired the defendant Ridgely Brown's ex-law partner as "an agent of retribution".
To recover under CUTPA the claimant must show that the alleged violation (i) was immoral, unscrupulous, unethical or oppressive; or (ii) caused substantial harm to the consumer; or (iii) offended public policy as it has been established by common law, statutes or otherwise established concepts of fairness. Sanghavi v. Paul Revere Life Insurance Co. 214 Conn. 303, 311-312.
No extended discussion of this issue is necessary. Suffice to say that the defendants have failed to sustain their burden of proof as to this count.
IV. THE EQUITABLE POWERS OF THE COURT
Although not strictly an issue in the case the defendants urge the court to exercise its broad, equitable powers to prevent a harsh result. Specifically, the defendants claim that they are "unable to refinance the loan at the present time because of market conditions, recent tax problems and this foreclosure action". They further argue that "if forced to sell they will have to sell in a terrible market and will, on top of it all, have to pay substantial capital gains taxes". They entreat the court to withhold foreclosure to allow them "to carry this property and pay their interest until they are able to refinance" in which event, "the bank will be paid in full". Although these arguments appeal to the court's sense of fairness they are no different from those which often accompany foreclosure cases and which the court would ordinarily consider not as impediments to judgment but as factors which might shape the form of the judgment. Application of the staying hand of equity is not warranted under these circumstances at this juncture.
In accordance with the foregoing a judgment of foreclosure may enter and the parties are ordered to appear before the undersigned to complete the bifurcated portion of the proceeding as to the form of judgment and attorney's fees. CT Page 10781
MOTTOLESE, J.