[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 18, 1997 CT Page 6213
The above-captioned injury case came before this court for trial on the merits of the plaintiff's claim that the defendant was negligent in carrying out a cosmetic procedure involving tattooing of color on to the lips to serve as a permanent lipstick.
Specifically, the plaintiff alleged in her complaint that the employee of the beauty salon owned by the defendant failed to clean the instrument used, such that the wrong color was injected, used a black pigment instead of the reddish brown color selected, and misinformed the plaintiff as to the permanent nature of the injection performed.
The defendant filed a special defense in which it alleged that the plaintiff executed a written release of the claims asserted.
At trial, the plaintiff testified that Jean Saldamarco, the employee of the defendant whom the plaintiff asked to perform the lip tattoo, performed a test injection in which she used the color that the plaintiff had selected. Since it appeared that the plaintiff had ample opportunity to see the color of the vial used, and since it was undisputed that the process involves use of a disposable needle, the court accepts this testimony. The plaintiff has failed to prove that the defendant negligently used the wrong color or that the equipment had traces of a different color from previous use, as claimed in her complaint.
The only remaining claim of negligence is that Ms. Saldamarco was negligent in representing to the plaintiff that the test injection would be lighter than the chosen color and would fade away. The evidence was undisputed that Ms. Saldamarco explained to the plaintiff that before injecting her lips over their entire area, it would be necessary to do a test injection in one corner to determine whether the color was as desired and whether the procedure would work, given prior sun damage to the lips of the plaintiff. The consent form signed by the plaintiff on May 13, 1993, contains a notation that a red-brown patch test and color test was being performed and that the color selected "may be to [sic] dark." Ms. Saldamarco testified that test patches are usually done behind a person's ear, but that because of the sun damage to the plaintiff's lips, the color could be expected to be CT Page 6214 darker on the lips than it would be on the skin behind the ear. The court infers that the choice to do the test on a corner of the plaintiff's lower lip was to determine the actual outcome on the sun-damaged tissue before proceeding with all of the lip area. Ms. Saldamarco did not deny that she told the plaintiff that the test patch would fade away and would not be permanent.
Instead of the desired reddish brown effect, the injection resulted in a black area below the skin surface. Contrary to the representation of Ms. Saldamarco, this test spot did not fade out, and the plaintiff was left with a thin black line about half an inch long at the side of her lower lip. That mark persisted until the plaintiff had it removed by an incision and laser treatments from September 1993 to March 1994.
The court finds that the defendant's employee was negligent in representing that the test pigment would fade away when that statement was contrary to fact. At the very least, Ms. Saldamarco represented as fact information that she was insufficiently sure was in fact true. In consenting to the procedure, the plaintiff relied on the representation that the test injection would fade away.
The Connecticut Supreme Court has ruled that "even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 217 (1987); Richard v. A. Waldman Sons,Inc., 155 Conn. 343, 346 (1967). The Court cited with approval inD'Ulisse-Cupo the following provision of the Restatement Second of Torts, § 552 (1979):
 One who, the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
If Ms. Saldamarco did not know whether a dark color injected into a sun damaged lip would fade away, she should not have stated that it would. The court finds that the plaintiff reasonably relied on Ms. Saldamarco's description of the risks and mechanics of the test process. CT Page 6215
The defendant claims that the plaintiff released it for any liability in connection with the test injection. The plaintiff, an insurance claims adjuster familiar with release forms and their operation, signed a form titled "Consent and Release" on May 13, 1993. That form states that "Whereas, client has been fully informed as to the methods and pro-procedures [sic] concerning the processes to be performed and the risks as set forth in Section III of this agreement; NOW, THEREFORE, Client releases Technician, her successors and assigns, now and in the future, from any and all claims, demands, actions and causes of actions, damages, costs, losses, expenses and compensation arising out of personal injuries and/or property damage, whether or not such injuries or damage are currently contemplated by the parties, as a result of the treatments and/or procedures rendered by Technician as set forth in Section II of this agreement." (Exh. 1).
The enumerated risks set forth in Section III of the agreement do not include the persistence of pigment injected for test purposes.
The structure of the consent and release form involves a quid pro quo. The "Whereas" clause indicates that full disclosure of risks is a condition to the plaintiff's agreement to release the defendant from liability with regard to those risks. Since the harm suffered was not one of the risks disclosed, and since the technician actually indicated that the test pigment would fade away, the condition upon which the release was based was not fulfilled.
The agreement between the plaintiff and the defendant was contractual, and part of the defendant's duty under the contract was to inform the plaintiff accurately of the risks of the procedure. Ms. Saldamarco did not so inform the plaintiff. Since the defendant failed to perform the condition upon which the agreement to release from liability was premised, the release is not enforceable.
The negligent misrepresentation of the defendant caused the plaintiff to consent to a procedure which left her with a line of dark pigment on her lower lip. She underwent a small incision and several laser treatments which involved what the plaintiff described as a small amount of pain, repeated scabs on her lip, and the inconvenience of going to a doctor for treatment. The CT Page 6216 defendant has paid all economic losses identified by the plaintiff, that is, the bills of the doctor who performed the procedure to remove the tattoo from her lip.
The section of the Restatement Second of Torts quoted above suggests that the damages available for negligent misrepresentation are pecuniary losses. This court has not been able to locate any decision of the Connecticut Supreme Court concerning the scope of the damages available as to the tort. The closest that Court has come to considering the issue is its statement in Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 579 (1995) that the remedy for negligent misrepresentation is independent of a remedy available on a contract claim.
Section 552 of the Restatement of Torts Second recapitulates a duty of one who in the course of his or her business or profession supplies erroneous information to those doing business with him or her. Beauticians are clearly in business, and their transactions involve bodily contact, not just economic transactions as in most businesses. In this respect, they may be analogized to the medical profession, in which practitioners with a contractual business relationship to patients are required to inform the patient accurately of risks before subjecting them to intrusions or invasions of their bodies. See Logan v. GreenwichHospital Assn., 191 Conn. 282 (1983). The negligent misrepresentation of beauticians, like those of medical practitioners, are capable of resulting in bodily injury as well as economic loss. It therefore seems logical that where bodily harm may be a consequence of negligent misrepresentation because of the nature of the services, bodily harm should be recognized as within the scope of the losses for which compensation should be available.
The noneconomic losses identified by the plaintiff in her testimony were the pain of an incision and laser treatment, (which she described as slight), the temporary disfiguration of having a small black line on her lower lip, and the disfigurement of and discomfort of the incision and repeated scabbing over of the site after treatments. While the plaintiff claims that she has a bump on her lip from the incision and from the shot of anesthesia administered, these were not visible upon inspection by this court. The court finds that fair, just and reasonable damages for the noneconomic losses that the plaintiff proved she experienced is $2000. CT Page 6217
Conclusion
Judgment shall enter in favor of the plaintiff against the defendant Panache V Incorporated in the amount of $2000. The plaintiff shall recover her court costs.
HODGSON, J.