[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Deardrian Benford, brings this complaint in three counts against the defendant, Connecticut General Life Insurance Company, her former employer.
Plaintiff alleges that she was terminated from employment by the defendant wrongfully and contrary to law.
In the first count, she alleges an implied contract of employment existed; the second count is based upon promissory estoppel; with the third count alleging discrimination because of her race and color.
The defendant denies the allegations alleged in these counts CT Page 9096 contending that the plaintiff was furloughed when her position was eliminated in 1994 as part of a cost saving reduction in force.
The plaintiff was a long-term employee of the defendant — over 20 years. She was 18 years old when she entered into employment with the defendant. The defendant had developed a program to increase minority employment which also permitted high potential minorities to be placed on a fast tract for advancement within the company. The plaintiff was placed within the fast tract program and advanced rapidly to more responsible positions with increased pay grades. Although she was on a fast tract for high potential minority employment, it was her responsibility to determine the area within the defendant company in which she was interested in working. Further, advancement was predicated upon her qualification for the position she sought, as well as an existing vacancy in that position. In the past, she had sought out employment areas that had the potential for growth which would create positions that needed to be filled which also had promotional opportunities. Over the years, the fast tract program was very beneficial to the plaintiff. The sour note came when in July 1994 a restructuring occurred within the defendant's organization based upon management's cost cutting and competitive policy decisions that eliminated the plaintiff's position, as well as those of her two colleagues within that section. The three women: the plaintiff, an African-American; a Caucasian; and an Asian-American were terminated as part of the restructuring.
The plaintiff does not directly question the defendant's policy in restructuring her employment section; she does insist that she could have and should have had the opportunity to apply for a comparable position within the defendant organization. She points out, prior to her termination, that other employees had been permitted to transfer out of the section being restructured and had avoided being terminated. However, there was no evidence presented to the court that any of these employees had prior knowledge of the restructuring or that they knew, or could have known, how it would affect the employment within the section in which the plaintiff worked.
The plaintiff also contends that her immediate supervisor, Raynelle Kuckel, had a responsibility to keep the plaintiff informed of available positions within the defendant organization that were within the plaintiff's salary grade and employment competence and that Ms. Kuckel had prior knowledge of the CT Page 9097 reorganization and its negative effect on the plaintiff.
Ms. Kuckel admits, when she had information about positions in which her staff personnel might have interest, she would convey this information, but this would be done when she had been informed by the staff member of an interest in a particular position or opening. The actual search for a position was the responsibility of the interested employee. Ms. Kuckel would then assist in obtaining information and pass it on to the employee. She in fact previously had done this for the plaintiff when she had indicated an interest in a particular position.
With regard to the elimination of her position due to the restructuring, plaintiff contends that Ms. Kuckel had prior knowledge that some members of her staff would be adversely effected in their employment. Ms. Kuckel does not deny that, but points out that she had no direct knowledge of the staff members affected; and when she did get that information, she immediately notified them, including the plaintiff. Further, she was not permitted to pass on to her staff any rumors which she might have acquired until the actual details were finalized and formally presented to her through the appropriate communication system. At that time, she notified the affected parties as well as the details of the restructuring. In the plaintiff's case, Ms. Kuckel was informed of the plaintiff's termination and its effective date approximately one month later and that during that month the plaintiff could seek transfer to any openings within the company within her competence level, and Ms. Kuckel would assist her to the extent she could. At that time, the plaintiff was also informed regarding benefits, etc.
The plaintiff did not take advantage of defendant's offer of assistance regarding transfers or by seeking assistance from Ms. Kuckel. Although plaintiff could have reported in at her desk during the month until the time of the actual termination, Ms. Kuckel did not see the plaintiff or receive any requests from her for assistance after the plaintiff was told of her termination.
The plaintiff's allegations in count one of her complaint are directed at the extent or term of her employment with the defendant. She admits that the general rule for contracts of permanent employment for an indefinite term (as at issue herein) are terminable at will. She however notes that there are exceptions to the general rule as when based upon statements in employer's personnel manual, also that the intention of the CT Page 9098 parties as expressed by their words or actions is essential to determine whether a contract was entered into, as well as its terms for proof of a commitment by the defendant to the plaintiff, specifically that there was such a contract containing terms wherein she could not be terminated at will, but rather termination would be only for just cause.
Plaintiff contends that such a commitment to her by the defendant resulted from representations to her by her superiors; that it could be inferred from the fact that she was a high potential minority employee who was on a fast tract for advancement throughout her career; that defendant's express policies regarding affirmative action and work force diversity assured the plaintiff of being given every opportunity for advancement; also that the defendant had established practices for filling vacant and new positions from its existing work force, especially directed toward workers being displaced from their positions; and that plaintiff's superior, Raynelle Kuckel, made a direct and express commitment to the plaintiff to actively assist the plaintiff in her career progression.
With regard to plaintiff's claim that an implied contract between the parties wherein the plaintiff would not be terminated from the employment without just cause resulted from the actions of the defendant, such as its policies for placing employees in other positions rather than terminating them, and because of the express commitment by her superior, Raynelle Kuckel, to actively assist the plaintiff in her career progression. The Court finds that none of these actions, nor those of Raynelle Kuckel, amounted to a contract between the parties wherein the plaintiff's at-will employment was modified to a continuing employment contract terminable only for just cause.
Further, plaintiff's termination because her position was eliminated through a valid business restructuring was never contested by the plaintiff. Plaintiff's further argument that the defendant had a duty to find the plaintiff a comparable position with her competence and pay grade has no basis in the evidence presented.
The plaintiff also alleges that, even if no enforceable contract existed between the parties, an action for promissory estoppel is appropriate when a contract cannot be enforced but that action or forbearance was induced by reliance on a promise.D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, CT Page 9099202 Conn. 206, 213, (1987).
The plaintiff's principal claim in support of her claim of promissory estoppel is that her entire employment career of twenty-one years had been with the defendant. However, she makes no showing that she was considering or actively searching for a position with another employer and that the defendant induced her to stay in the defendant's employ by promising her continuing advancement or employment. Rather, she testified that because she was on a fast tract career path, she had numerous career enhancing advancements including salary increases. She was confident of her abilities and that no change could occur within the defendant organization that would result in her termination. That an internal restructuring could result in her termination was not a possibility that she considered as a threat to her advancing career with the defendant. Thus, she made no attempts at other employment and there was no reason for the defendant to offer her employment other than her status as an at-will employee.
There is no question that the plaintiff was startled, dismayed, hurt and resentful when she was terminated. This normal reaction, without more, is not a sufficient basis for enlarging an employee's at-will employment status to that of employment terminable only for just cause.
The Court finds that the plaintiff has not proved by a preponderance of the evidence that promissory estoppel exists herein and finds for the defendant on this count.
The plaintiff's third claim is that the defendant discriminated against her on account of her race. Specifically, the discrimination resulted from the failure of the defendant to notify the plaintiff of promotional opportunities that were available to white employees, and the ultimate termination of her employment with the defendant is in violation C.G.S. 46a-60(a)(1) and 46a-60(a)(6). The plaintiff alleges that the actions of the defendant in failing to notify her of available promotional opportunities was discriminatory in that white employees had received such notices. Thus, that there was disparate treatment by the defendant regarding promotional opportunities for her, an African-American, as compared to defendant's white employees.
The plaintiff's principal contentions are that she was discriminated against because advancement positions occurred and were filled by white women without notification being given to CT Page 9100 her of the vacancies and an opportunity being given to her to apply for these positions. The plaintiff points the finger of blame at her supervisor, Raynelle Kuckel, contending that Ms. Kuckel's duty as the plaintiff's mentor was to be aware of these openings and to bring them to the plaintiff's attention, that Ms. Kuckel failed to carry out this responsibility because the plaintiff is African-American: that, because Ms. Kuckel failed to keep the plaintiff informed of the promotional opportunities, she could not apply for and be considered in the filling of one of these positions; that when the restructuring of the division occurred she was terminated; whereas, had she been transferred to one of the vacancies previously mentioned, she would not have been vulnerable to termination upon the restructuring of her section.
Although the plaintiff felt that her supervisor, Ms. Kuckel, failed as her mentor on the fast tract career program by not protecting her from termination, even assuming, arguendo, that to be true it would not bring her actions or failure to act within the purview of discriminatory actions based upon race. There are other non-discriminatory reasons that could be reasonably applied to her actions, i.e., the women who filled the above-mentioned positions had each been involved in organizing and justifying the creation of the positions. Each had the background and involvement in the position for some period of time prior to the actual authorization of the position. It was logical and good business practice to have that person continue doing the work once the position was authorized.
In addition, although Ms. Kuckel was the plaintiff's mentor, this in no way implied any duty or responsibility was owed by the mentor to the person being advised or assisted. Rather, it called for that person to approach the mentor for assistance, suggestions and advice when needed. Although Ms. Kuckel was the defendant's supervisor in her work duties, the mentoring relationship was entirely separate with no supervisory aspects entailed in this relationship. Its primary purpose was to permit fast tract employees a method to move up the career ladder at a pace commensurate with ability, limited however to available open positions and subject to the employee's desire to proceed along an available career path.
In the plaintiff's employment history with the defendant, the fast tract career program was quite successful and beneficial to her. She had numerous promotions in both employment CT Page 9101 responsibilities and in salary. She, by reason of ability and diligence, regularly moved up along the fast track. She had some assistance provided by her mentors. However, the primary driving force on this upward path was her own constant search for career opportunities. She searched for positions that would be opening up in a growth section of the defendant's products. Over the years of the employment with the defendant, the plaintiff's career path had been generally upward. She had no need for seeking employment elsewhere. She did not feel threatened with transfers or being furloughed even though other employees had suffered such action when periodic restructuring occurred. When she was furloughed as a part of corporate restructuring because of competitive pressures, she and the other two women in her section were furloughed. The plaintiff was understandably dismayed, distraught and disappointed. This was a new, unpleasant experience that she never anticipated. She refused to accept the defendant's stated reason that her position and those of her two co-workers were being eliminated. Thus, they were redundant and being furloughed. The plaintiff did not accept this explanation by the defendant. She believed that there was a personal animus directed toward her by Ms. Kuckel and that Ms. Kuckel could have done more to place her in another position.
This belief by the plaintiff that Ms. Kuckel's actions were adverse to the plaintiff's best interests as an employer of the defendant was not supported by the facts. Ms. Kuckel did what was required of her as the plaintiff's mentor. There was no evidence presented that indicated that Ms. Kuckel acted in any way not required of her as the plaintiff's supervisor or that was adverse to plaintiff's interests as an employee.
Thus, based upon the prior determination by the court, the court finds for the defendant on all counts of the plaintiff's complaint.
Judgment is to enter for the defendant and against the plaintiff as set out above, together with court costs for the defendant and against the plaintiff.
KREMSKI, J.T.R.