[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
The plaintiffs bring this action to recover monies they claim they loaned to the defendants from 1984 to 2000. The plaintiffs have applied for a prejudgement remedy to secure the sum of $100,000 with which the plaintiffs paid certain expenses on behalf of the defendants over that period of time. The application is opposed by the defendant Manuel Frois, son-in-law of the plaintiffs.
The plaintiffs Lawrence and Paula Kaufman are the parents of the defendant Pamela Frois and the in-laws of the defendant Manuel Frois.[1]
The defendants married each other in 1981 and had two children born in 1982 and 1984. In 1984, the plaintiffs, who lived in Tuxedo, New York, bought a house in Wolcott, CT, in which the Frois family took up residence. The plaintiffs also began to help the defendants by paying certain household expenses, such as heating bills, electric bills, insurance, and property taxes.
In 1989, the plaintiffs agreed to sell the Wolcott property to the defendants for $115,000. A contract was drafted and signed by all parties obligating the defendants to pay the plaintiffs $20,000 per year until the purchase price was fully paid, at which point the plaintiffs would deed the property to the defendants.
The defendants did not pay any money toward the purchase price of the house. Rather at the end of each year when a $20,000 payment would be due, the plaintiffs forgave the failure to pay and expressly treated the forgiveness as a gift to the defendants. Each year the plaintiffs sent a writing to the defendants memorializing this gift. Eventually the plaintiffs forgave the entire $115,000, and on May 28, 1998, the plaintiffs deeded the house to the defendants. The plaintiffs make no CT Page 8982 claim on the defendants for this $115,000, which is conceded to be aninter vivos gift.
Meanwhile the plaintiffs continued to pay certain household expenses for the defendants. All of these were paid by check directly to the vendor or taxing agency, rather than to the defendants themselves. The defendants had several discussions between themselves about their obligation to pay back the plaintiffs for all the money paid on their behalf. But at no time were there any direct discussions between the defendant Manuel Frois and the plaintiffs about repaying the plaintiffs.
The marriage of the defendants faltered, and in August 2000, Pamela Frois filed for divorce. Once it became clear that a divorce was contemplated, the plaintiffs for the first time made demand on the defendants for repayment of the money expended by the plaintiffs for household expenses, which the plaintiffs now explicitly began calling a loan. The complaint of the plaintiffs alleges that there was an express agreement that the defendants would repay the approximately $75,000 that the plaintiffs had expended for electric, oil, and insurance charges and real estate taxes. The defendant Manuel Frois denies that there was ever any express agreement in regard to this money, nor that any conduct of the defendants can be treated as obligating him to repay any monies to the plaintiffs.
The court finds that there was never any agreement between the defendant Manuel Frois and the plaintiffs about the obligation to repay any of these sums. In fact the discussions the defendants had with one another seem more to reflect a moral or familial obligation to repay the money advanced by the plaintiffs than to acknowledge any legal obligation to do so. At any rate, there were never any discussions between the defendant Manuel Frois and the plaintiffs about repaying this money, nor did the defendant Pamela Frois act as the agent of Manuel Frois in acknowledging any obligation to pay the plaintiffs back. The plaintiff Lawrence Kaufman's testimony that he (Kaufman) always believed that the defendant understood that it was expected that the money would one day be repaid is insufficient to establish either the existence of a repayment contract.
Nor is the alternate theory of the plaintiffs — that the defendants are obligated to repay the loan under the doctrine of promissory estoppel — persuasive. That doctrine binds a promisor to fulfill a promise which he should reasonably have expected would induce action or forbearance, and did indeed induce such conduct, on the part of the promissee. D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 213 (1987). At oral argument, the plaintiffs urged the court to view the continued receipt by the defendants of the largesse CT Page 8983 of the plaintiffs as conduct that induced the plaintiffs to continue to provided expense money, on reliance that there would be repayment at some point. A fundamental element of promissory estoppel is the existence of a clear and definite promise. Id. The court finds no such definite promise, nor indeed any promise, here. Moreover, the court does not find that any conduct of the defendants, except perhaps the conduct of staying happily married for a time, induced the plaintiffs to provide money for household expenses.
The plaintiff Lawrence Kaufman made a telling comment during his testimony about the true nature of the payments at issue here. There comes a point, he said, at which "generosity has to stop." The court finds that over the years the plaintiffs made a gift to the defendants of expenses to help them make ends meet. After the marriage soured and after the plaintiffs became concerned that their daughter might not retain the full value of the Wolcott home after the divorce, the plaintiffs rethought the wisdom of having treated the expense payments as a gift, and decided that the payments should more properly be treated as a loan. This hindsight cannot transform a gift into a loan that the defendants are legally obligated to repay.
Further, despite the testimony of the plaintiff Lawrence Kaufman that he expended sums of approximately $75,000, the checks contained in Exhibit 2 (four copies of the same checks are included in this exhibit) only add up to about $23,531, all of which was expended before 1988. The statue of limitations would clearly bar the collection of any sums due before June of 1996. Conn. Gen. Stat. § 52-576.
The court finds that the plaintiffs have failed to establish that there is probable cause that a judgment against the defendants will enter in their favor. Accordingly the application for prejudgment remedy is denied.
Patty Jenkins Pittman, Judge