[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #109
This is an action arising out of the alleged constructive discharge of the plaintiff, Janice Pasqua (Pasqua), by the defendant, Thomson Interactive Media (TIM). On July 1, 1999, Pasqua filed her initial complaint against TIM. In Pasqua's second amended complaint, now the operative pleading,[1] counts one and two are directed against TIM and allege, respectively, breach of implied contract and breach of the implied covenant of good faith and fair dealing. Counts three through six are directed against "the Defendants" and allege, respectively, promissory estoppel, negligent misrepresentation, detrimental reliance and negligent infliction of emotional distress."[2] On August 31, 1999, TIM filed a timely answer and four special defenses.
Pasqua alleges the following in her second amended complaint. Pasqua was employed by another employer when she responded to a newspaper advertisement placed by Allen Gladstone, a recruiter for TIM, offering an employment opportunity with TIM. In November, 1998, Gladstone interviewed Pasqua for the position of executive assistant. During the interview, Pasqua advised Gladstone that she required a flexible work schedule CT Page 13270 because of family commitments. Gladstone assured Pasqua that as long as she completed her work, TIM would accommodate her scheduling needs. Thereafter, Pasqua met with Jonathan Sheer, the chief executive officer of TIM and during this interview, Pasqua advised Sheer that she required flexibility in scheduling her work hours. Sheer assured the plaintiff that TIM was "family friendly" and gestured to a photograph of his children. In December, 1998, Pasqua resigned from her job and accepted TIM's offer of employment.
According to the evidence, Pasqua began working for TIM on December 15, 1998 and, on December 16, 1998, she sent an e-mail message regarding her work schedule to Sheer and other TIM employees. In this message, Pasqua stated that she planned to leave the office at 4:45 p.m. most days, and that she might leave at 3:15 or 3:30 p.m. one day a week. Thereafter, Sheer advised Pasqua of the hours she would be required to work. Pasqua informed Sheer that she would not be able to work for TIM if her schedule was not flexible. She alleges that she was then constructively discharged by Sheer.
On February 29, 2000, TIM filed a motion for summary judgment on counts one through five of Pasqua's complaint,[3] on the ground that no genuine issues of material fact exist and that TIM is entitled to judgment as a matter of law. Pursuant to Practice Book § 17-45, TIM filed a memorandum of law and documentary exhibits in support of its motion for summary judgment. On July 6, 2000, Pasqua filed a memorandum of law in opposition to TIM's motion for summary judgment, accompanied by supporting documentary exhibits.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000).
Count One — Breach of Implied Contract
In count one of her second amended complaint, Pasqua alleges that TIM, by "words, actions, conduct, employment policies, handbooks, personnel CT Page 13271 policies, complaint procedure, discipline policies and benefits manuals created an implied contract of employment under which [Pasqua] would only be terminated for just cause." She alleges that TIM breached this contract when she was constructively discharged. TIM argues that it is entitled to summary judgment on this cause of action because the evidence demonstrates that Pasqua was an employee-at-will, TIM could terminate her employment at any time without cause and Pasqua has not presented evidence to show that TIM and Pasqua had an implied contract under which she could not be terminated without just cause. TIM argues that because Pasqua admits that she never received an employee handbook or any other information or materials regarding TIM's policies, procedures or benefits, she could not have relied on any representations contained therein. TIM also argues that Pasqua relies only on her subjective beliefs and has failed to allege facts sufficient to demonstrate that TIM's words or actions created an implied contract.
In opposition, Pasqua does not dispute TIM's contention that she did not receive any written materials regarding its policies and procedures. In fact, it is undisputed that prior to initiating this action, Pasqua had not received nor read any of TIM's employment policies, handbooks, personnel policies, grievance procedures, discipline policies or benefits manuals. (Defendant's Memorandum, Exhibit H, ¶¶ 4, 6; Exhibit B, pp. 96-99.) Instead, Pasqua relies on her contention that TIM denied her the flexible work schedule she claims it repeatedly promised to her and which she made clear was a `deciding factor' in her decision to accept TIM's offer of employment. Pasqua maintains that there was a meeting of the minds between the parties that one of the conditions of her employment was that she would be allowed to begin to work before 9:00 and leave before 5:00. She alleges that during every stage of the interviewing and hiring process, she discussed the issue of flexible working hours with Gladstone and Sheer. She concludes that the exact terms of the agreement the parties reached regarding her schedule is a question of fact for the jury, and is not a proper subject for summary judgment.
Generally, employment for an indefinite term is terminable at will.Torosyan v. Boehringer Ingelheim Pharmaceuticals. Inc., 234 Conn. 1, 14,662 A.2d 89 (1995). Pasqua does not allege that she had an employment contract with TIM for a specified term. Thus, in order to prevail on a claim of breach of an implied contract of employment, Pasqua must demonstrate an agreement between the parties pursuant to which the plaintiff was to be classified as something other than an employee at will.
At the outset, it is noted that "[a]ll employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a CT Page 13272 bargain of some kind; otherwise, the employee would not be working." (Internal quotation marks omitted.) Gaudio v. Griffin Health ServicesCorp., 249 Conn. 523, 532, 733 A.2d 197 (1999). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, [a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Torosvan v. Boehringer IngelheimPharmaceuticals, Inc., supra, 234 Conn. 14. An employment at will relationship can, however, be "modified by agreement of the parties." Id., 15. In order to sustain a cause of action for breach of an implied contract of employment, "the plaintiff [has] the burden of proving by a fair preponderance of the evidence that [the employer] . . . agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause." (Internal quotation marks omitted.) Id.
Although the evidence indicates that there may be issues of fact on the question of whether TIM agreed that Pasqua would be permitted to work a flexible schedule, these issues are not material to the question of whether TIM made a commitment to her that she could not be terminated without just cause. As stated by the Connecticut Supreme Court, an agreement between an employer and employee which pertains solely to terms such as hours of work and which does not limit the terminability of employment is terminable at will. Id., 14. Pasqua does not offer any evidence of words, action or conduct by TIM which indicated or implied that she could not be terminated without just cause. Indeed, the evidence indicates that Pasqua testified that no one told her that she could only be discharged for just cause. (Defendant's Memorandum, Exhibit B, p. 97.)
Pasqua has not provided sufficient evidence to show that there is a genuine issue of material fact on the question of whether the parties had an implied employment contract pursuant to which TIM could only discharge her for just cause. Therefore, the court grants TIM's motion for summary judgment as to count one.
Count Two — Breach of the Implied Covenant of Good Faith and Fair Dealing
In count two, Pasqua alleges that she and TIM had an implied covenant of good faith and fair dealing and that TIM breached the covenant by allowing its agents, representatives and employees to wrongfully force Pasqua to resign. TIM argues that it is entitled to judgment as a matter of law on this cause of action because Pasqua voluntarily resigned. TIM reasons that her resignation precludes her from maintaining her claim for breach of an implied covenant of good faith and fair dealing because her CT Page 13273 claim is based solely on wrongful termination.[4] TIM also argues that the claim would fail even if the plaintiffs allegations were true, because she has not shown that TIM was motivated by a demonstrably improper purpose which violates an important public policy. In opposition, Pasqua argues that a claim for breach of the implied covenant of good faith and fair dealing does not require her to allege that TIM violated a public policy. Pasqua further argues that there is a genuine issue fact in dispute as to whether a contract existed between the parties.
In Connecticut, it is well established that every contract, express or implied, carries with it an implied covenant of good faith and fair dealing, the bad faith violation of which is actionable in tort. SeeGupta v. New Britain General Hospital., 239 Conn. 574, 598, 687 A.2d 111
(1996). The Connecticut Supreme Court has, however, limited the circumstances in which such a covenant can be applied to employment at will relationships, such as the relationship Pasqua had with TIM. Accordingly, the court has stated that "[w]here employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right [to discharge at will]. . . . We see no reason . . ., to enlarge the circumstances under which an at-will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.) Magnan v. Anaconda Industries, Inc.,193 Conn. 558, 572, 479 A.2d 781 (1984).
"In evaluating claims [of violations of public policy], [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . ., or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) Daley v. Aetna Life Casualty Co. 249 Conn. 766, 798, 734 A.2d 112 (1999). In this case, Pasqua's cause of action is premised solely on her contention that she was forced to resign. She has not alleged or presented evidence that TIM's reason for discharging her violated a public policy. Indeed, she claims she is not required to do so. Because "a breach of such an implied covenant cannot be predicated simply upon the absence of good cause for discharge;" Magnan v. Anaconda Industries, Inc., supra, 193 Conn. 571; TIM's motion for summary judgment is granted as to count two.
Count Three — Promissory Estoppel
In count three, Pasqua alleges a cause of action for promissory estoppel. Specifically, Pasqua alleges that the defendants intended to induce her to accept employment with TIM by promising her a flexible work CT Page 13274 schedule. She further alleges that she relied on these promises by accepting employment with TIM, that the defendants knew or should have known that she would so rely, and that her reasonable reliance on these promises caused her damages. TIM argues that it is entitled to summary judgment on this count because Pasqua cannot prove that TIM made a definite promise to her or that she changed her position in reliance on the alleged promise. TIM also claims that Pasqua failed to exercise due diligence to learn the exact terms of her work schedule before accepting their offer. In response, Pasqua contends that there is a genuine issue of material fact on the question of whether TIM made a clear and definite promise to her regarding the flexibility of her schedule and that she took appropriate measures to learn the terms of their promises.
"Section 90 of the Restatement Second [Contracts] states that under the doctrine of promissory estoppel `[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" D'Ulisse-Cupo v. Board of Directors of Notre Dame HighSchool, 202 Conn. 206, 213, 520 A.2d 217 (1987). Thus, a plaintiff asserting a cause of action for promissory estoppel must plead and prove the following four elements: 1) the promissor made a clear and definite promise; 2) the promisee reasonably relied on the promise; 3) the promise induced the action taken by the promisee; and 4) injustice can be avoided only by enforcement of the promise. Id., 213-15.
As to the first element, "[a] fundamental element of promissory estoppel . . . is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Id., 213. The promise must be clear and definite and must contain the material terms that are essential to the formation of a contract. Id., 215. In this case, Pasqua presented evidence that Gladstone told her that TIM had flextime and that when she asked him if she could start work earlier than 9:00 in order to leave before 5:00, "he responded with an unequivocal `yes'." (Plaintiffs Memorandum, Exhibit 1, ¶ 4.) She testified that when she spoke to Sheer about her need for a flexible schedule, he said that TIM was "family friendly." (Plaintiffs Memorandum, Exhibit 2, p. 34.) She also testified, however, that prior to being hired by TIM, she did not tell Gladstone or Sheer that she intended to leave work before 5:00 on a regular basis. (Defendant's Memorandum, Exhibit B, p. 33, 36, 39, 54, 61.)
The Connecticut Supreme Court has found that similarly indefinite representations regarding future employment are not sufficient to support a cause of action for promissory estoppel. Specifically, in D'Ulisse-Cupov. Board of Directors of Notre Dame High School, supra, 202 Conn. 208, CT Page 13275 the plaintiff based her cause of action on her employer's statement that "everything looked fine for [her] rehire for the next year;" a notice posted on the school bulletin board stating: "All present faculty members will be offered contracts for next year;" and a statement by her employer that she would have a contract for the following year. The court held that these representations were not sufficiently promissory nor sufficiently definite to support a claim for promissory estoppel. Id., 214. The statements, the court explained, were "no more than representations indicating that the defendants intended to enter into another employment contract with the plaintiff at some time in the future." Id., 214. Here, the statements that Pasqua relies on can be characterized as mere representations that TIM was willing to enter into an agreement with Pasqua regarding her need for a flexible schedule which would allow her to leave before 5:00 on an occasional basis. The plaintiff has failed to show that there is a genuine issue of material fact on the first element of promissory estoppel, i.e., that TIM made a clear and definite promise. Therefore, TIM is entitled to judgment on this count.
Furthermore the plaintiff failed to show that there is a genuine issue of material fact as to the second element, i.e, reasonable reliance. To satisfy this element, the plaintiff must show that her reliance on TIM's alleged promise regarding her use of a schedule such as the one she later outlined in her e-mail was reasonable. "[A] promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." Id., 213, citing E. Farnsworth, Contracts, § 2.19, p. 95. As stated above, Pasqua testified that prior to being hired by TIM, she did not inform TIM of her precise scheduling needs. (Defendant's Memorandum, Exhibit B, pp. 33, 36, 39, 54, 61.) She did not present evidence that she attempted to ascertain whether TIM would permit her to work according to the schedule outlined in her e-mail. According to the evidence, the first time Pasqua made her actual scheduling needs known to TIM was through the e-mail, which she sent the day after she began work. (See Defendant's Memorandum, Exhibit E.) "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) Chotkowski v. State, 240 Conn. 246, 268, 690 A.2d 368 (1997).
Because the evidence shows that Pasqua did not inform TIM of her actual scheduling needs and failed to use diligence to ascertain whether TIM would agree to allow her to work the hours she later outlined in her e-mail, she has failed to show that her reliance on TIM's promises of flexibility was reasonable. Therefore, the court grants TIM's motion for summary judgment as to count three. CT Page 13276
Count Four — Negligent Misrepresentation
In count four, Pasqua alleges that the defendants, "through promises in . . . words, actions, conduct, employment policies, handbooks, personnel policies, grievance procedures, discipline policies and benefits manuals represented to the [Pasqua] that she would have flexibility of her employment schedule." She also alleges that the defendants knew or should have known that the representations were false and would induce employees to accept employment with TIM. She alleges that she relied upon these representations to her detriment by accepting employment with TIM. TIM argues that it is entitled to summary judgment on this count because Pasqua cannot show that TIM supplied false information to her regarding TIM's willingness to accommodate the scheduling needs of its employees, either purposefully or innocently, and that Pasqua's failure to bring her specific scheduling needs to the attention of TIM precludes her from claiming that she justifiably relied on any representation made by TIM. In opposition, Pasqua argues that because TIM concedes that the parties discussed the use of a flexible work schedule, a genuine issue of material fact exists regarding whether TIM conveyed false information to Pasqua on the issue of flexibility.
It is undisputed that prior to the commencement of this action, Pasqua had not received nor read any of TIM's employment policies, handbooks, personnel policies, grievance procedures, discipline policies or benefits manuals. (Defendant's Memorandum, Exhibit H, ¶¶ 4, 6; Exhibit B, pp. 96-99.) Consequently, the question is whether TIM, by its words, actions or conduct conveyed false information to Pasqua regarding the flexibility of her employment schedule and induced Pasqua to rely on this information.
Connecticut courts apply the following standard to causes of action for negligent misrepresentation: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra, 202 Conn. 218. Thus, "even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) Id., 217.
As to the element of falsity, Connecticut courts recognize that "falsity is an essential element of a negligent misrepresentation claim, CT Page 13277 and . . . [the plaintiff] bears the burden of demonstrating that the defendant made certain representations . . ., that were in fact untrue. . . . [The plaintiff] need not prove that the representations made by the defendants were promissory, but only that they contained false information." (Citations omitted.) Daley v. Aetna Life Casualty Co., supra, 249 Conn. 792-93. Here, TIM concedes that both Sheer and Gladstone told Pasqua that she could have some latitude in her schedule in the event that she occasionally needed to attend to family matters. (Defendant's Memorandum, Exhibit A, ¶ 9; Exhibit C, ¶ 5.) Pasqua attests that she asked Gladstone if she "could start earlier than 9:00 in order to leave before 5:00, to which he responded with an unequivocal `yes.'" (Plaintiffs Memorandum, Exhibit 1, ¶ 4.) Although both parties agree that, during the interview process, Pasqua failed to inform TIM that she intended to leave early on a regular basis; (Defendant's Memorandum, Exhibit A, ¶ 11, Exhibit B, pp. 33, 36, 39, 54, 61, Exhibit C, ¶ 7); Pasqua testified that after she sent her e-mail, Sheer told her that she should "expect to stay . . . every day until at least 5:15 or 5:30 and sometimes even later." (Plaintiffs Memorandum, Exhibit 1, ¶ 7, Exhibit 2, p. 55.) This evidence is sufficient to raise a genuine issue of material fact on the question of whether TIM provided Pasqua with false information or negligently misrepresented TIM's willingness to allow her to leave before 5:00 at least occasionally.
Finally, "the plaintiff must allege and prove that the reliance on the misstatement was justified or reasonable." Williams Ford, Inc. v.Hartford Courant, Co., 232 Conn. 559, 579-80, 657 A.2d 212 (1995). Pasqua offered evidence that in deciding whether to accept TIM's offer of employment, she reiterated to Gladstone that "the flexible time was very important to me, and this was a big step for me, and that that is going to be one of the deciding factors." (Plaintiffs Memorandum, Exhibit 2, p. 39.) She said that when she called Gladstone to accept the position, she told him "I would accept the position . . ., based on what we had talked about." (Plaintiffs Memorandum, Exhibit 2, p. 39.) This evidence is sufficient to raise a genuine issue of material fact on the issue of whether Pasqua reasonably relied on TIM's representations that she would be allowed to work on a flexible schedule. Indeed, the Connecticut Supreme Court has "consistently held that reasonableness is a question of fact for the trier to determine based on all the circumstances." Id., 580. Accordingly, the court denies the defendant's motion for summary judgment as to count four.
Count Five — Detrimental Reliance
In count five, Pasqua alleges that the defendants engaged in conduct intended to induce her to leave her previous employment to accept employment with TIM. She claims that the defendants knew that she would CT Page 13278 rely on its promises in resigning her previous job to accept employment with TIM, and that she reasonably did so rely to her detriment. TIM argues it is entitled to summary judgment on this count because Connecticut does not recognize a separate cause of action for detrimental reliance. Pasqua does not specifically address this argument.
"There is no cause of action technically designated as `detrimental reliance.' What [the plaintiff] has in mind is an action for promissory estoppel, which is itself a form of breach of contract action. SeeD'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 213, 520 A.2d 217 (1987)." Janicki v. Hospital of St.Raphael, 46 Conn. Sup. 204, 210, 744 A.2d 963 (1999). On this basis, the court grants TIM's motion for summary judgment as to count five.
Count Six — Negligent Infliction of Emotional Distress
In count six of Pasqua's second amended complaint, which was filed subsequent to TIM's motion for summary judgment, she alleges a cause of action for negligent infliction of emotional distress. Pasqua alleges, inter alia, that the defendants "breached their duty of reasonable care to [Pasqua] by the manner in which they treated [her] before, during and after her termination from employment with [TIM]." Neither TIM nor Pasqua addressed this count in their respective memoranda of law, and no supplemental or amended summary judgment papers have been filed by the parties. Therefore, because the TIM has not moved for summary judgment on this count, the court declines to address it in the context of TIM's motion for summary judgment.
The court grants TIM's motion for summary judgment as to counts one, two, three, and five and denies the motion as to count four.